STATE OF MINNESOTA *vs.* J. HAL REID.

October 9, 1888.

**Rape — Evidence — Fresh Complaints.—** Nothing is better settled than that, in a prosecution for rape, the fact that the prosecutrix made complaint soon after the injury, is competent in corroboration of her testimony.

**Same — Inferences from Delay in Complaint — Evidence to Rebut.—** Such statements by her made and adhered to are not received as part of the *res gestæ,* but because the unexplained silence of the injured party for a considerable time is calculated to cast suspicion upon the prosecution and seriously affect her credibility, and is a strong, though not conclusive, presumption against the truth of the charge. Hence evidence to rebut such presumption is competent, and delay in making such complaint, or concealment of the assault, may be explained, and, subject to reasonable limitations, goes to the weight, and not to the competency, of the evidence. And the inferences to be drawn from the conduct of the prosecutrix in such cases are for the jury.

**Same — Resistance — Prosecutrix rendered Unconscious.—** In such prosecutions, where it appears that when the alleged offence was committed, the prosecutrix was rendered unconscious in consequence of the assault and violence of the defendant, the case falls under subdivision 2, § 235, Pen. Code, and not under subdivision 5 of the same section.

**Criminal Law — Trial — Improper Remarks of Counsel. —** Where improper remarks, occurring in an altercation between counsel, and made in the presence of the jury, and alleged to be prejudicial to the case of the defendant, are promptly checked by the court, and the jury duly cautioned to disregard the same, there is no ground for an exception.

**Evidence held Sufficient for Conviction.**—The determination of the trial court, on the motion for a new trial in this case, that the verdict is supported by the evidence, *held* sustained by the record.

The defendant was tried and convicted in the district court for Ramsey county, before *Kelly*, J., on an indictment for rape. A motion for a new trial was made and denied, and defendant was sentenced to 15 years' imprisonment in the state prison, from which judgment he appeals.

*C. D. O'Brien* and *F. B. Hart,* for appellant.

*Moses E. Clapp*, Attorney General, and *J. J. Egan*, for the State.

VANDERBURGH, J. Upon the record in this case, which presents the evidence and all the proceedings in full, we discover no sufficient ground for the objection that the evidence on the part of the prosecution failed to make a case for the jury, or that the testimony of the prosecuting witness was inconsistent and improbable in itself, and so entirely unsupported as to have made it the duty of the trial court to set aside the verdict for this cause. No instructions embracing these propositions were asked by counsel, and no exceptions were taken to the charge of the court, in which the case was clearly and impartially presented to the jury. And after a careful examination of the evidence it seems to us, as it must have appeared to the counsel as well as the court on the trial, that, if the jury believed the testimony of the prosecuting witness, embracing the facts upon which the charge was founded, it would be sufficient to support a verdict of guilty, and that the question of her credibility and of the weight and value of the corroborating evidence was for the jury. So that, especially after the trial judge, who saw the witnesses, observed their demeanor, witnessed the whole trial, and became practically familiar with the merits of the case as presented by the evidence, is unable, after a careful consideration of it upon the motion for a new trial, to say that the verdict is not justified, the appellate court, from its stand-point, cannot affirm that there was error in his refusal to grant a new trial on that ground.

1. In support of the charge, the evidence of the prosecuting witness tended to prove that the parties were alone in her room engaged in conversation, when she was surprised and suddenly overcome, her

mouth stopped, her arms and person so held down by superior strength as to prevent her struggles and resistance; that she was shocked by the assault, and temporarily lost consciousness; that her person was lacerated and greatly injured; and that, upon returning to consciousness, he suppressed her attempted outcries and resistance, and persisted in completing the offence. That she received grievous personal injuries of the character complained of by her is corroborated by the evidence of the medical witnesses who were called to attend her, as to her physical condition, and the nervous prostration and muscular soreness which, according to their testimony, supervened. And whether her explanation of the reasons why she made no such outcry as to attract the attention of inmates in the lower part of the house during or immediately subsequent to the occurrence was reasonable and credible, was certainly for the jury. It appears that her sister, who occupied the same room, returned within a brief period after the defendant left, when the prosecutrix immediately complained to her of the nature of the assault, and her physical injuries; and from the evidence on the part of the state it appears that she soon after went out and met the defendant at his boarding-place, and charged him with the offence, when he excused himself on the ground that he was intoxicated; and he very soon afterwards left for another boarding-place in the city, upon the opposite side of the river. This was on Friday night. On Sunday morning he left the state, taking the train at a suburban station.

2. The defendant, in his testimony, presents an entirely different account of the affair from that given by the prosecutrix. He swears that she was not unconscious at all, and his counsel makes the point that, assuming her evidence to be true, the case of the state is fatally defective in that it does not appear that he knew that fact. But the case of the state must rest upon the testimony of the prosecutrix, if found worthy of credit by the jury; and if her testimony as to the assault and conduct of the defendant is true, it does not fall under subdivision 5, § 235, of the Penal Code, but under subdivision 2; that is, the case was one where resistance is "forcibly overcome." And in the latter class of cases, if the non-resistance proceeds from the fact that the prosecutrix was overpowered by superior force, or from

her not being able, from lack of strength, to resist longer, the offence is complete. 1 Russ. Crimes, \*677. And it would be none the less so if unconsciousness should result from an assault and the violence and misconduct of the accused.

3. She had no medical attendance until, after two days, the Monday following the occurrence, when a physician was called, and made examination as to her physical condition, to whom she made a statement or complaint of what she had suffered, similar to that before made to her sister; and, in giving his testimony as to the nature and results of his examination, he stated that fact against the defendant's objection. This is also assigned as error. Nothing is better settled than that, in prosecutions for rape, the fact that the injured party made complaint to suitable persons soon after the event, is competent evidence to corroborate her testimony as to the assault and outrage committed upon her. From the nature of the case, such statements are not generally part of the *res gestæ.* It is not on that ground that such evidence is received. If it were, then the particulars of the complaint would be admitted in evidence, which the accepted rule forbids. It is received because, in case of such an outrage, the unexplained silence of the prosecutrix for a considerable time is calculated to cast suspicion upon her testimony, and seriously affect her credibility. *State* v. *Knapp,* 45 N. H. 148. The doctrine is peculiar to this offence, and is very carefully and correctly stated by Mr. Bishop, as gathered from all the authorities, as follows : "The law not only permits the ordinary tests to be applied to the complaining witness in these cases, but it has also adopted some special ones not permissible in other classes of cases. On ordinary grounds anything which the woman said or did, of the *res gestæ* of the ravishment, will be admissible in evidence. But aside from and beyond this, it is competent to show by her that, after the alleged rape, especially recently after, she complained of it to suitable persons, and exhibited, if such was the fact, marks of violence and other like indications as confirmatory of her sworn testimony. It is of special practical importance that the complaint was recent, and explanations of any delay are competent. But the doctrine, in strict law, appears to be that delays, especially if not great, only weaken the effect of

her evidence with the jury." 2 Bish. Crim. Proc. (3d Ed.) § 963. The inference derived from the conduct of the prosecutrix is one of fact for the jury, and not of law for the court. It is laid down very generally that if the complaint is not made without any inconsistent delay, it is a strong, but not conclusive, presumption against the truth of the charge. Hence delay is subject to be explained on the same ground that evidence to account for one's silence, which would otherwise operate against him, is received. 4 Cooley, Bl. *213, note; *State* v. *Ivins,* 36 N. J. Law, 233; *State* v. *Knapp,* 45 N. H. 148, 155; *State* v. *Niles,* 47 Vt. 82; *Turner* v. *People,* 33 Mich. 363, 383; *People* v. *Brown,* 53 Mich. 531, (19 N. W. Rep. 172;) *State* v. *Shettleworth,* 18 Minn. 191, (208, 213, 214;) *State* v. *Peter,* 8 Jones, (N. C.) 19; *State* v. *DeWolf,* 8 Conn. 93, (20 Am. Dec. 90;) *Smith* v. *State,* 80 Am. Dec. 372, notes; *Baccio* v. *People,* 41 N. Y. 265, 271. There is no inflexible rule in regard to this matter; and we think the reasonableness of the conduct of the prosecuting witness, and the sufficiency of her explanations as bearing upon the question of her credibility, were for the jury, in connection with all the other circumstances presented by the evidence, particularly in view of her alleged physical condition. The defendant's counsel had previously inquired of her in respect to the delay in making a public complaint till Tuesday, which was made by others without her knowledge at the time, and her failure to complain to the housekeeper the next day; and upon her re-examination her evidence tended to show that she was not aware that the matter had got into the papers in the mean time, and that she had been enjoined to avoid the scandal of publicity, and the shock which might result therefrom to the health of her mother, who was feeble. If she was suffering from such an assault, it would be reasonably expected that she would state the cause of her injuries to her physician, and it would undoubtedly have been made a matter for unfavorable comment before the jury, if she had been silent, or had assigned any other reason. We cannot hold, therefore, that the trial court erred in admitting the evidence of the repetition of the complaint to him under the circumstances. And since the jury are to judge of the credibility of the witnesses, and the relative weight of their testimony, this court will not undertake to say

that the interview with her physician was a scheme to fabricate evidence for the prosecution, though the circumstances were proper subjects for the comment of counsel and the careful scrutiny of the jury.

4. We are unable to see why the inquiry made by defendant's counsel, upon the cross-examination of the prosecuting witness, in reference to her having read over the report of the evidence before the examining magistrate, was not proper, generally, upon the question of the good faith and credibility of the witness. It was not necessary to lay the foundation for contradiction or impeachment in such case. But as counsel might easily have obviated any objection by answering the inquiry of the court as to his purpose in asking the question, or submitted his proposition in writing, as the court required, he cannot reasonably complain of the ruling of the court. Besides, the question, though slightly changed in form, and much more specific as to the circumstances embraced in the inquiry, was afterwards answered by the witness.

5. It is also objected that certain remarks of the county attorney, made in the presence of the jury after the completion of the argument of the defendant's counsel, were manifestly prejudicial. They were made in a personal altercation between counsel, which was promptly arrested by the court. And the jury were duly cautioned, in the course of the charge, to disregard anything of the kind. There was no exception or ground for exception. The matter cannot be assigned as error here. *State* v. *Brown,* 12 Minn. 448, (538;) *Loucks* v. *Chicago, M. & St. Paul Ry. Co.,* 31 Minn. 526, 534, (18 N. W. Rep. 651.)

6. The exclusion of questions addressed to Dr. Brinley, on his cross-examination, in respect to the manner in which he advertised his business, cannot be alleged as error. It was not a question as to his learning, skill, or experience, or relating to the merits. It was rather a matter of professional propriety in respect to his manner of advertising his business. It was in the discretion of the court to determine how far an examination of that kind should be permitted to proceed.

7. The hypothetical question put to the same witness was properly ruled out, because it did not fairly present a statement of the case as

presented by the evidence upon the subject upon which the opinion of the witness was asked.

8. A witness on behalf of the defendant testified that he advised him "to get out of the way." This was shortly after the offence was alleged to have been committed, of which the witness had then heard. It was not material that he should testify what the secret purpose or motive, not communicated to the defendant was, which influenced him in giving such advice. The rejection of the evidence was not error.

9. It is also objected that the presence of the mother of the prosecuting witness in the court-room during the trial was calculated to influence the jury, and excite sympathy. She was not examined as a witness, but was simply present as a spectator. Relatives of a party or witness, as well as other citizens, are entitled to be present at public trials. This is too plain to require any discussion.

We do not deem it necessary to notice other assignments of error in this case; but we are fully satisfied, after a full and careful examination, that the record in this case discloses no substantial errors warranting this court in setting aside the verdict and granting a new trial.

Judgment affirmed.

COLLINS, J., (*dissenting.*) I feel obliged to dissent, and will state my reasons as concisely as the importance of the case will permit. Upon the redirect examination of Dr. Brinley, the state was permitted to show that, when he (three days after the alleged outrage) examined the lacerations and bruises upon the complainant, she told him that she had been raped. I think the admission of this testimony error, for which a new trial should be awarded. In no other class of criminal offences do we find an exception to the reasonable and well-justified rule that hearsay evidence must be excluded. I feel confident that such exception should be confined to its narrowest limits, and the rights of a defendant in prosecutions of this class jealously guarded against encroachment by the introduction of a kind of testimony which, in or out of court, is regarded as of a most mischievous and unreliable character. It is admitted that these persons were improp-

.erly together; and, in such cases there is more danger of an unjust .conviction than where there is an utter absence of a foundation for -the charge. In the one instance there is a basis upon which may be .built the claim that rape has been committed, and that which in truth ·was mere fornication becomes in court the most detestable of crimes, ·while in the other the story is entirely a fabrication, and for that rea-.son less likely to be credited. The rule which I think has been re-.laxed in the admission of the physician's testimony is broadly enough .stated thus: In cases of rape, the conduct of the person against whom the offence is said to have been committed, and in particular :the fact that she made complaint, soon after the offence, to persons :to whom she would naturally complain, are deemed to be relevant. .See Steph. Dig. Ev. art. 8, and note. Under this the testimony as to .complainant's statement to her sister that she had been outraged was clearly admissible as tending to corroborate her present assertions, .and to rebut any presumption which might have arisen had she re-:mained silent. *State* v. *Shettleworth*, 18 Minn. 191, (208.) We then .have to deal with an exception to a wise and salutary rule as to hear-.say; and the exception is that, upon the trial of persons charged with -the crime of rape, it may be shown that the female made a reason-.ably prompt complaint to those to whom she would naturally speak ·in her distress. The admissibility of such testimony is not wholly dependent upon the minutes or hours which may have elapsed, but more upon opportunity and circumstances. It need not be made in-·stantly, nor to the first persons the injured female may meet. The opportunity being afforded for her to denounce the perpetrator of the crime to those persons in whom she may have confidence,—to such as we should naturally expect an appeal for assistance and vindica-tion by one who has been so cruelly wronged,—if she remains silent, without reasonable excuse, the presumption is against her, and the .story is looked upon with a degree of distrust. And the disclosures ·should be to some extent spontaneous, such as we might ordinarily .anticipate; for instance, to friends and relatives, or to an officer of -the law. If such statements be made, they not only rebut the sus-.picion which silence might engender, but tend strongly to confirm. It is, of course, impossible to establish any rule with preciseness; for

the surroundings and circumstances of each case alone can direct and guide the court to a conclusion which will not be unjust and oppress-ive, and which will not add to the dangers and difficulties which be-set the unfortunate man charged with so odious a crime as rape. In the case at bar there was an attempt by the complainant and her sister to smother the affair, which proved unsuccessful, mainly because the latter was unable to repress and control her indignation when meeting the defendant soon after she had heard her sister's story. The newspapers then made it public. The defendant, after being assailed by the sister in the street, left the state, advised so to do by a friend, and his pursuit and prosecution had been determined upon before the statement was made, the admission of which constitutes the alleged error. More than this, the complainant had so far re-covered as to be able to walk to a depot, travel by rail to another city, in which she walked, first, to her sister's and thence to the doctor's office, that her injuries might be ascertained, and medical testimony thereof be had upon contemplated prosecution. She did not go to the physician for protection, assistance, or vindication. She went that competent evidence might aid, sustain, and corroborate her story upon the witness stand. Her visit was formal, and upon business. Her statements then made as to the cause of her bruises and lacera-tions were of the same quality. They were not the exclamations of a deeply-injured female, who, flying from her assailant, seeks refuge in the arms of a protector; nor were they what we reasonably ex-pect from one who has suffered an outrage, and seeks comfort and consolation from the lips of those who are nearest and dearest to her. They were not *complaints*, but assertions which savor strongly of method and design. If properly admissible in evidence, I see no point where a court can halt and say that statements of this class are irrel-evant and inadmissible, because too remote, too artificial, to be of any probative value. The defendant's version of what transpired between these parties, as related by him upon the witness stand, does not com-mend him to any honorable man; but I am sure that no one who listened to the testimony upon the trial would have expressed surprise or felt that there had been a miscarriage of justice, had the verdict been, not guilty. It would serve no good purpose, however, to detail

· the testimony, nor is it of consequence; for in all cases, without re-gard to the weight of evidence or its conclusiveness, I am thoroughly impressed with the conviction that the exception to the rule needs to be carefully guarded, and that there should be "no relaxation of the rules of evidence for the purpose of supporting the accusation.·　＊　＊　＊ There is much greater danger that injustice may be done the defend-ant in cases of this kind than there is in prosecutions of any other character." *People* v. *Hulse*, 3 Hill, 309, 317; *Baccio* v. *People*, 41 N. Y. 265. It may be urged that a jury will carefully scrutinize such testimony, and give to it the consideration it is fairly entitled to, and · no more. If jurors could thus be depended upon, would ordinarily exercise good judgment and proper discrimination, the suggestion would be quite sufficient. But it is a matter of common experience that hearsay is most insinuating and mischievous, difficult to justly and impartially weigh when once impressed upon the human mind. It is in my judgment the duty of the court to carefully examine, and, unless clearly within the exception to the rule, prevent the admission of testimony so easily fabricated, and so liable to do a rank injustice.