STATE v. ERNEST J. TOTH.[1]

January 2, 1943.

No. 33,282.

McMeekin & Quinn, for appellant.

J. A. A. Burnquist, Attorney General, Ralph A. Stone, Assistant Attorney General, and George H. Tyler, County Attorney, for the State.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Defendant was convicted of the crime of rape. He appeals from the judgment of conviction and the sentence thereupon imposed. There was no motion for a new trial. Defendant's present counsel did not represent him at the trial. It is here contended (1) that the evidence does not sustain the conviction, and (2) that the trial court erred in admitting certain evidence over defendant's objection.

The facts, except those directly pertaining to the alleged assault, are not seriously in dispute. Emil Kish and his wife lived on a farm near Elk River in Sherburne county. On the evening of February 12, 1941, they engaged Delrose Kastendick, a neighbor girl, 18 years of age, to stay with their children, aged two and four years, while they attended a party at the home of John Hor-

[1]Reported in 7 N. W. (2d) 322.

vath, about two miles distant. Mrs. Kish called for Delrose about six o'clock in the evening and brought her to the Kish home. The Kishes left for the party about eight o'clock. Delrose retired at a quarter to ten, removing some of her clothing. The children were then in bed, asleep, one on the couch in the living room, the other in Mrs. Kish's bedroom, where Delrose was to sleep. Toward midnight, defendant, aged 20, a half brother of Emil Kish, came to the Kish home and entered the house. He had been at the Horvath party and left early, as he claims, for the purpose of bringing his friend, Ernie Bohner, who lived near the Kish place, to the party. To explain his stopping at the Kish home, defendant testified that Bohner's drive was inaccessible because of snow, for which reason he drove into Kish's driveway, intending to walk up and get Bohner; that his automobile got stuck in the snow and he decided it would be too late to go and get Bohner so he went into the Kish house. He had been there many times before. Defendant and Delrose were not acquainted, though they lived in the same neighborhood and each knew who the other was. There is sharp conflict in the testimony concerning the events that occurred after defendant's arrival. Complainant testified that she was awakened about 12 o'clock by someone crawling into bed with her; that she jumped out of bed and called Mr. and Mrs. Kish but got no answer; that she ran into the dining room, which adjoins the bedroom, pulled on the light, and saw that it was Ernest Toth, the defendant; that he caught hold of her and carried her into the bedroom; that she struggled and got away from him and ran into the front room; that defendant pursued her, again carried her back to the bed, and thereupon committed an act of intercourse against her will by overcoming her resistance. It would serve no useful purpose to relate all of the details testified to by complainant. If she resisted to the extent testified to by her, and the jury must have so found, defendant's act constituted rape within the meaning of Minn. St. 1941, § 617.01(2), (Mason St. 1927, § 10124[2]).

Defendant admits the act of intercourse, but claims that complainant consented and encouraged it. Likewise, no useful purpose would be advanced by relating his claims in detail. Suffice it to say that had the jury believed him, they could, and no doubt would, have found him not guilty.

Subsequent events lend support to the claims of both complainant and defendant. For defendant, it may be said that complainant's clothes were not torn. There is nothing in the record to indicate any disarrangement of the household furniture; nor does it appear that the children were awakened. Complainant slept with Mrs. Kish the rest of the night, but said nothing about the assault until morning, when she told her that Ernie had attacked her. Defendant remained at the Kish home the balance of the night. Emil Kish testified that there was nothing unusual about Delrose's appearance when he and Mrs. Kish returned from the party at about 2:30 a. m., and that he had asked her how she felt and that she had replied "Good."

Other events lend credence to complainant's narration of the affair. She was in the kitchen wiping blood from her legs when the Kishes returned. She asked Mrs. Kish for some rags. In the morning, after she told Mrs. Kish about the attack, Mrs. Kish communicated the information to her husband. After the chores were finished, they took Delrose home and reported to her mother something of what had happened. Delrose was then very upset, nervous, dazed, and weak. The Kishes and complainant's mother took her to Elk River to consult Dr. Clothier. His examination disclosed bruises, a general weak and stunned condition, severe hemorrhaging caused, as he testified, by a ruptured hymen. The girl was in bed for a week and out of school for six weeks thereafter, the loss of blood having brought on secondary anemia.

In our judgment the evidence amply sustains the conviction. Complainant's story, if accepted by the jury, was sufficient of itself to prove the crime charged. State v. Connelly, 57 Minn. 482, 59 N. W. 479; State v. Trocke, 127 Minn. 485, 149 N. W. 944; State v. Lightheart, 153 Minn. 40, 189 N. W. 408; State v. Maru-

das, 187 Minn. 138, 244 N. W. 549. The question whether she resisted to her utmost "is a relative one, depending upon the circumstances of each case, such as the time, place, and character of the assault, and the age, intelligence, courage, and temperament of the female," and where the facts are conflicting it is for the jury. State v. Ingraham, 118 Minn. 13, 14, 136 N. W. 258, 259; see also State v. Rutledge, 142 Minn. 117, 171 N. W. 275; State v. Greenstein, 162 Minn. 346, 202 N. W. 892; State v. Wulff, 194 Minn. 271, 260 N. W. 515.

Complainant's mother was allowed to testify over defendant's objection concerning what her daughter had told her after the doctor's examination. The admission of that testimony is asserted as error. That such evidence was properly admitted in corroboration of the testimony of complainant is well settled. In State v. Reid, 39 Minn. 277, 280, 39 N. W. 796, the court said:

"Nothing is better settled than that, in prosecutions for rape, the fact that the injured party made complaint to suitable persons soon after the event, is competent evidence to corroborate her testimony as to the assault and outrage committed upon her. From the nature of the case, such statements are not generally part of the *res gestae*. It is not on that ground that such evidence is received. * * * 'It is of special practical importance that the complaint was recent, and explanations of any delay are competent. But the doctrine, in strict law, appears to be that delays, especially if not great, only weaken the effect of her evidence with the jury.' 2 Bish. Crim. Proc. (3d Ed.) § 963. The inference derived from the conduct of the prosecutrix is one of fact for the jury, and not of law for the court."

The mother's testimony consists only of the statements: "Well, she told me that he attacked her * * * she said that she was attacked that night, what happened to her from Ernie Toth." No further details of the conversation were testified to. Such evidence was admissible and does not go beyond the limitations set forth in State v. Gandel, 173 Minn. 305, 217 N. W. 120. The fact that

the injured party complained to her mother several hours after the attack goes only to credibility, which is a matter entirely within the purview of the jury. State v. Shettleworth, 18 Minn. 191 (208); State v. Reid, 39 Minn. 277, 39 N. W. 796; State v. Rothi, 152 Minn. 73, 188 N. W. 50; State v. Gandel, 173 Minn. 305, 217 N. W. 120. Nor is the fact that defendant's name was mentioned in the mother's testimony important, as the question of identity is not here involved.

Judgment affirmed.