## STATE v. CLAYTON N. WULFF.[1]

April 12, 1935.

No. 30,220.

*Meighen, Knudson & Sturtz* and *William C. Green,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *Elmer R. Peterson,* County Attorney, for the state.

DEVANEY, CHIEF JUSTICE.

This is an appeal from a judgment of conviction and from an order of the district court denying defendant's motion for a new trial. Defendant is here charged with rape under 2 Mason Minn. St. 1927, § 10124(2), which makes it a crime for a man to have intercourse with a female over ten years of age and not his wife "when her resistance is forcibly overcome." The date of the alleged crime is February 9, 1934. The complaint was filed March 19, 1934,

[1] Reported in 260 N. W. 515.

more than a month later. The prosecutrix was 18 years of age at the time and was employed as a domestic servant in the home of defendant. Prior to her engagement at the home of defendant prosecutrix had been employed as a domestic servant in other homes. She had attended high school for one year and had lived in Memphis, Tennessee, and in Minneapolis, Minnesota, before going to Albert Lea, Minnesota, where defendant lives. Her father had been an attendant at the Christian Science church at Albert Lea, and the prosecutrix had attended Sunday school there for a time.

Defendant is a jeweler and a graduate optometrist. He is 37 years of age, married, and has one daughter, then six years of age. He has lived all his life in Albert Lea and was active in the social life of the community. His reputation was untouched by any record of previous misconduct. On the night of February 9, 1934, the defendant, his six-year old daughter, and prosecutrix were alone in defendant's home, which is located on a closely built-up street of the city. The important question is as to the voluntary character of the intercourse which it is admitted by defendant took place that night between prosecutrix and himself. Prosecutrix claims that her resistance was forcibly overcome. Defendant claims acquiescence. The act took place at about ten p. m. in the maid's room on the second floor and was attended by more or less conversation. The maid's room is on the southeast corner of the second floor; the defendant's bed, in which his daughter was then sleeping, was distant from the maid's bed by a matter of no more than 20 feet. The hallway on which both the maid's and defendant's rooms opened was illuminated by a street light through a window at the end. A telephone was within reach of all occupants of the house. While admitting on cross-examination that she moved over in her bed and made no outcry when defendant entered her room, prosecutrix described on direct examination an extreme use of force. Defendant claims that the sexual intercourse was purely voluntary. There was no loss of consciousness; no threat of reprisal. There were no screams or outcries. No one was informed of the events here related until 4:20 p. m. on February 10, the next day, when the brother of prosecutrix went to the de-

fendant's home. Meantime the prosecutrix had prepared the usual family breakfast, had had her hair finger waved, and had visited with the young man to whom she was affianced. After the evening meal prosecutrix went to the office of Dr. Palmer for examination. No pathological evidence as to the alleged rape was discovered, *i. e.*, no ruptured hymen, no bruises or irritation of parts, etc. Dr. Palmer testified that prosecutrix might have bled internally. On February 11 prosecutrix left the home of defendant and went to her father's home in Faribault.

We must here decide:

(1) Does the record in this case leave such grave doubt in the minds of the court as to defendant's guilt as to require a new trial?

(2) Is testimony of specific acts, unconnected with the crime, admissible for the purpose of showing or tending to show want of chastity on the part of prosecutrix as bearing on the question of consent?

(3) Is testimony of a charge made and signed by a church official on a controverted question admissible?

■ In this case such grave doubt exists as to the guilt of defendant as to make it the duty of the court to grant a new trial. The physical condition of the prosecutrix on examination shortly after the alleged rape; her own story as to the manner of the happening, which might well be believed to be conclusively inconsistent with the claim of forcible resistance; the failure of the prosecutrix to cry out, to make use of the phone, to go to her near friends on the morning following; and, on the contrary, her pursuit of her usual duties with her thoughts turning to the matter of finger waving her hair before she met her young man friend on the following afternoon—all these circumstances, because they do not evidence the normal reaction of a violated and injured virgin, cause grave doubts in our minds as to defendant's guilt. Under the rule of State v. McLarne, 128 Minn. 163, 150 N. W. 787; State v. Jacobson, 130 Minn. 347, 153 N. W. 845; State v. Nyhus, 176 Minn. 238, 222 N. W. 925, we are justified in granting a new trial where the evidence leaves such a grave doubt in our minds. In the interest

274

of justice, another jury ought to pass upon the evidence. Particularly applicable here is the language found in State v. Connelly, 57 Minn. 482, 485, 59 N. W. 479, 481:

"There is no rule of law which forbids a jury to convict of rape on the uncorroborated evidence of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony. But the courts have always recognized the danger of convicting on her uncorroborated evidence, for, in the language of Lord Hale, 'it is an accusation easily made, hard to be proved, and still harder to be disproved by one ever so innocent.' * * *

"The crime is so abhorrent that, to some minds, to charge a person with it, raises a presumption of guilt. It is human nature to incline to the story of the female, especially if a young girl. * * *

"Hence all the authorities agree that this is a crime requiring special scrutiny by the jury, and a careful weighing of the evidence and all remote and near circumstances and probabilities in cases where the testimony of the female is not corroborated and especially where the testimony is at all improbable or suspicious."

■ The question whether evidence of specific acts unconnected with the crime charged should be admitted rather than, or as well as, general reputation evidence when offered by defendant for the purpose of showing or tending to show want of chastity on the part of prosecutrix, as bearing on the question of consent, is not now before us. It will arise on a new trial, however, so we will dispose of it now. We decide that such evidence is admissible. This question was expressly left undecided in State v. Brown, 185 Minn. 446, 241 N. W. 591. 1 Wigmore, Evidence (2 ed.) § 200, p. 435, points out the conflict among the various courts on this question and concludes that the better rule admits the evidence. With this we agree. See also Wigmore, 1934 Supp. § 924a, p. 379, for a very interesting account of investigations conducted by social service workers and psychiatrists of women or young girls who testify as complaining witnesses. Dean Wigmore's reasoning perhaps has no application to this specific case, but it does lead us to adopt the general rule that evidence of particular acts as well as

evidence of general reputation is admissible to prove unchastity and thus to bear on the question of consent.

We do not think the evidence exhibit 2 was admissible. This was a charge of conduct unbecoming a member of the church to which defendant belonged, signed by an officer thereof who was not in court. Under the doctrine of Edie v. School Dist. No. 1, 183 Minn. 522, 237 N. W. 177; Harms v. Proehl, 104 Minn. 303, 116 N. W. 587, this should have been excluded.

We have examined the other assignments of error with care and find nothing prejudicial therein.

Reversed and new trial granted.