## STATE v. RICHARD JOSEPH ZACCARDI.

159 N. W. (2d) 108.

May 17, 1968—No. 40,847.

*C. Paul Jones,* State Public Defender, *Ronald J. Wolf,* Assistant State Public Defender, and *Rosalie Wahl,* for appellant.

*Douglas M. Head,* Attorney General, *William B. Randall,* County Attorney, and *Thomas M. Quayle,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

OTIS, JUSTICE.

Defendant was charged with rape in violation of Minn. St. 617.01(3),[1] was found guilty, and sentenced to a term not to exceed 30 years. He appeals from the conviction.

---

[1] The present statute is Minn. St. 609.291(2).

Although defendant denies that he was in any way implicated in the offense, he raises as an additional defense the issue of consent. In support of his argument, defendant claims that the victim testified she neither cried out nor physically resisted the intruder's advances. On the contrary, she said she conversed with him in a calm, dispassionate manner, attempting to dissuade him from accomplishing his purpose.

We find no merit in defendant's contention. The victim was a 24-year-old college graduate who lived alone in an apartment at 787 Cromwell Avenue in St. Paul, and was employed as a film librarian. She testified that at about 12:30 a. m., on September 8, 1966, she was awakened by a man kneeling beside her bed with a towel across his face. The intruder held an object next to her ear and told her it was a knife. She tried to dissuade him from molesting her, but was threatened with a beating if she resisted. The intruder tied her wrists and her ankles to the bedposts, blindfolded her, and raped her.

By way of explanation for having failed to call out or struggle more vigorously against the intruder, the victim testified that she had in mind the Speck case in Chicago, where eight young nurses had been methodically murdered in one episode. Over defendant's objection, she was allowed to state that for this reason she feared for her life and did not want to provoke the defendant to violence. Defendant assigns as error the admissibility of this testimony.

A doctor who subsequently examined the victim testified that he found marks on her wrists and ankles which were reddened. In addition, there was expert testimony confirming the existence of seminal fluid on her sheets and night clothes. Defendant also assigns as error the admissibility of that evidence.

■ Testimony corroborating the victim's version of the offense and defendant's implication strongly supports the verdict of guilty. Although the victim did not see the intruder's face, she identified defendant as the offender by reference to his build, his voice, his hair, and his hands. Significantly, the victim, another tenant, and the caretaker all testified that defendant had been in the apartment building only a few days before the offense, inquiring for someone named "Nelson" or "Tom Nicholson." All three identified defendant as the person with whom they had con-

versed about the presence of such a person in the building. At the time of the offense, the victim elicited from the intruder the statement that his name was Tom Nicholson.

Two fellow employees of defendant took the stand and testified that he voluntarily confessed to them what amounted to a rape, without identifying the victim. Thomas Fortuna stated that prior to defendant's arrest, but after the date of this offense, defendant admitted that on the previous evening he had gone into a girl's apartment, attempted to have sexual relations with her, that she resisted and he succeeded only after threatening to beat her up. Defendant told Fortuna he had identified himself as "Tom Mickelson or Nicholson." Fortuna, on cross-examination, acknowledged that he had had a fight with defendant about a year previously but had worked harmoniously with him since that time. The other coworker, John Hegner, also testified that immediately after the crime, defendant, while at work, related to him in detail an occurrence in which he had gone into a girl's house, knelt beside her bed, threatened her with a blade which he had in his hand, and had sexual relations with her. According to Hegner, the defendant claimed to have tied up the victim *after* the crime was committed. Defendant also admitted to Hegner that he stole money from the victim's purse, a fact to which she had previously testified.

On the issue of the sufficiency of evidence to identify defendant and to support a finding that the victim did not consent, we hold that the verdict is manifestly proper. The victim's own identification of the intruder, the defendant's presence in the apartment building only a few days before the crime, and the confessions he made to fellow workers are persuasive evidence of guilt.

■ Nor do we find any error in permitting the victim to show she was intimidated by the recent publicity concerning the Speck murders. The jury had a right to know the reason for her not wishing to antagonize the intruder, and it was proper for the prosecutor to argue that she did not struggle or cry out for that reason.

■ On cross-examination, objection was sustained to a question put to the victim with respect to her prior chastity. This is assigned as error.

Defendant asserts that the question is determined by State v. Wulff, 194 Minn. 271, 260 N. W. 515. In that case we held that evidence tending to show want of chastity was relevant to the question of consent. There the alleged rape occurred between members of the same household, and consent was a pivotal issue. Here the evidence overwhelmingly preponderates against a finding of consent. Defendant did not pursue the matter when the objection was sustained and did not make an offer of proof with respect to the issue of chastity. Under such circumstances, we subscribe to the views expressed by Judge Sanborn in his dissenting opinion in Packineau v. United States (8 Cir.) 202 F. (2d) 681, 689:

"There is no sound reason why a prosecutrix in a case such as this, after her direct examination in chief, should be subjected on cross-examination to an attempted besmirching of her character for chastity by insinuation or innuendo. If a defendant in such a case has evidence that the prosecutrix was an immoral woman (either generally or specifically) who probably put up no resistance to his advances, the proper time for him to offer such evidence is in defense. Even an immoral woman has some freedom of selection, and consent obtained from such a woman by a stunning blow on the jaw is no consent at all."

■ In asserting that it was error to permit evidence of seminal stains, defendant relies on State v. Schwartz, 266 Minn. 104, 112, 122 N. W. (2d) 769, 774. However, that case does not govern. In Schwartz the stains were taken from the defendant's clothing and were used to corroborate his identification. In the instant case, the stains were found on the victim's belongings and were admissible simply to corroborate her testimony that she had been sexually violated. For this limited purpose, it was properly received.

■ Finally, defendant asserts that the court erred in permitting a neighbor of the victim to repeat what the victim had told him immediately following the crime. He testified that she had said to the intruder, "I don't want to be raped * * * I can't let you rape me." This assignment of error is without merit. In State v. Toth, 214 Minn. 147, 150, 7 N. W. (2d) 322, 324, we held that a third person could testify

to a victim's version of the crime if the conversation occurred shortly after the offense. Whether it is part of the res gestae or admissible on a broader theory as suggested in the Toth case, it was clearly competent for whatever probative value the jury wished to accord it.

Affirmed.