## STATE v. STANLEY CURTIS HILL.*

244 N. W. 2d 728.

June 25, 1976—No. 46592.

---

* Certiorari denied, 429 U. S. 1065, 97 S. Ct. 794, 50 L. ed. 2d 782 (1977).

*Connolly & Heffernan* and *Thomas J. Barrett,* for appellant.

*Warren Spannaus,* Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

*David W. Cohoes* and *Randall Tigue,* for Minnesota Civil Liberties Union, amicus curiae, seeking reversal.

Heard before Sheran, C. J., and Otis and MacLaughlin, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

Defendant, Stanley Curtis Hill, appeals from a conviction for aggravated rape which occurred on July 27, 1975, in the city of St. Paul, for which he has been sentenced to serve a term not to exceed 20 years in the state reformatory.[1]

Three issues are presented on this appeal: 1) Whether Minn. St. 609.347 unconstitutionally deprived defendant of the opportunity to introduce evidence bearing on the defense of consent; 2) whether our decision in State v. Gabler, 294 Minn. 457, 199 N. W. 2d 439 (1972), should be overruled; and 3) whether the evidence is sufficient to sustain the verdict.

We do not reach the constitutional question raised and decline to overrule the Gabler case. We hold that the evidence supports the verdict. Accordingly we affirm.

---

[1] Although Minn. St. 1974, § 609.291, under which defendant was charged, was repealed on June 5, 1975, by L. 1975, c. 374, § 13, and superseded by Minn. St. 609.342, the repeal did not affect crimes committed prior to August 1, 1975, pursuant to Minn. St. 609.351. The trial court limited the term to 20 years although the statute under which defendant was convicted permitted a term of 30 years, since the court was of the opinion that the defendant should not suffer the more severe penalty of the old statute and at the same time be deprived of a possible defense pursuant to Minn. St. 609.347, which was expressly made applicable to crimes committed before August 1, 1975. Minn. St. 609.351.

At the time of this offense the complainant was unmarried and 22 years of age. On the evening of July 27, 1975, she had joined a group of four other women at a friend's house where she played cards and drank vodka and orange juice. At about 10 p. m. the group visited a bowling alley and bar near Pierce Butler Road and Milton Street in St. Paul. While there, the complainant continued drinking and had in all during the evening approximately six drinks. She testified that she was drunk when she left the premises about midnight and fell asleep in her friend's car parked in the lot adjacent to the bar, waking up to find she was across the street on the ground with defendant leaning over her. She started to scream, and struggle. She later claimed that defendant then threatened to kill her and struck her on the head four or five times to subdue her. She stated that defendant removed her clothes, put his hand over her mouth to silence her, and forcibly had intercourse with her.

An off-duty police officer saw a man and woman in the parking lot at about 10 minutes before 1 a. m. that morning. He noticed the woman fall abruptly backwards while sitting on the ground with the man standing over her, and watched the man carry her across the street. The police officer was in a car whose lights shone on the two figures as they lay on the ground. He heard a woman scream and saw the man put his hand over her mouth. Thereupon the officer departed to summon reinforcements. Upon returning to the scene he observed defendant running or trotting down the road and took him into custody.

Other officers who arrived at the scene testified they found complainant in a state of shock, crying and complaining that she had been "balled" by defendant and that he had sexually penetrated her.

Defendant took the stand in his own defense. He testified that he had gone to the bar which the complainant and her friends were patronizing but felt unwelcome and departed. As he crossed the parking lot he saw the complainant on the ground and spoke to her. Although he was a stranger, she responded by addressing

him as "Bruce." (Later testimony disclosed that one of the women in her party had a friend by that name.) Defendant, in the course of his conversation with complainant, approached the subject of engaging in sexual relations with her and quoted the complainant as saying she "took things as they came." Upon her invitation he thereupon carried her across the street to a secluded spot and was preparing to have sexual intercourse with her when he was interrupted by her again calling him "Bruce." According to defendant, complainant then "seemed to be a little more groggy than I had anticipated that she was," and he noticed that "she was wide-eyed and she was looking at me in a fashion as though she was seeing me as somebody totally different." Consequently, he withdrew. She began crying and "acting in a schizophrenic manner, * * * being cooperative, seductive toward me, and then being totally withdrawn from the scene which was taking place." Defendant testified that he thereupon turned away, left, and was shortly apprehended.

■ Defendant's entire defense rested on the claim that complainant consented to engaging in sexual intercourse with him. In support of this contention it was stipulated on appeal that defendant made the following offer of proof while cross-examining the complainant,[2] and that the court made the following ruling:

"1.  That the complainant had been living with her boyfriend for a period of time; that when separated, they sometimes spent nights together.

"2.  While complainant and this boyfriend were separated, she would also see a former boyfriend when he was home on leave; that there was a sexual overtone to this relationship.

"3.  That these matters were held by the Court to be excluded under M.S.A. 609.347, Subd. 3(a), but that counsel was permitted

---

[2] The offer was made outside of the hearing of the jury but for some reason was not transcribed by the reporter. However, since the offer was excluded, it remained only an unsupported allegation which complainant had no occasion to deny.

to inquire in relation to contemporaneous sexual relations within a week of the event, under M.S.A. 609.347, Subd. 3 (b)."

The pertinent provisions of Minn. St. 609.347, subd. 3, are as follows:[3]

"Subd. 3.   In a prosecution under sections 609.342 to 609.346, evidence of the complainant's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order under the procedure provided in subdivision 4, and only to the extent that the court finds that any of the following proposed evidence is material to the fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

"(a)   When consent or fabrication by the complainant is the defense in the case, evidence of such conduct tending to establish a common scheme or plan of similar sexual conduct under circumstances similar to the case at issue on the part of the complainant, relevant and material to the issue of consent or fabrication. Evidence of such conduct engaged in more than one year prior to the date of alleged offense is inadmissible;

"(b)   Evidence of specific instances of sexual activity showing the source of semen, pregnancy, or disease at the time of the incident or, in the case of pregnancy, between the time of the incident and trial."

As we read the statute, evidence of a complainant's previous sexual conduct is not admissible unless the court finds that it is material to the issue of consent or fabrication and that its prejudicial nature does not outweigh its probative value.

In chambers before the trial began, the court ruled that the defendant could show complainant was living with a man prior to the time of this offense. It is not clear whether in ruling on the defendant's offer of proof the trial court reconsidered his initial decision with respect to the admissibility of that evidence. However, one of the state's witnesses did testify that com-

---

[3] The full text of the statute is attached as an appendix.

plainant had a steady "boyfriend," but at the time of the offense he and the complainant had broken off their relationship. There was also evidence that complainant knew a man named "Bruce," who was a friend of one of the other women in the party but who had never dated the complainant.

Defendant contends that the court's refusal to permit further inquiry of complainant concerning her cohabitation with two other men denied him his constitutional right of confrontation as we have construed that right in State v. Hembd, 305 Minn. 120, 232 N. W. 2d 872 (1975). He argues that the excluded evidence would have demonstrated that complainant was psychologically prepared to consent to intercourse with defendant because she had previously experienced a sexual relationship with two other men, with one of whom she had quarreled and had consequently broken off their relationship.

In State v. Wulff, 194 Minn. 271, 274, 260 N. W. 515, 516 (1935), we adopted the rule that evidence of particular acts as well as evidence of general reputation is admissible to prove unchastity as it bears on the question of consent. In a more recent case, State v. Zaccardi, 280 Minn. 291, 159 N. W. 2d 108 (1968), we held that the evidence of unchastity was not a proper subject of cross-examination but, if admissible at all, was a part of defendant's case in chief. Subsequently, in State v. Warford, 293 Minn. 339, 200 N. W. 2d 301 (1973), we suggested in a footnote that there may be circumstances where such evidence is not admissible even as a part of defendant's case. We now hold, as a matter of law apart from statute, that the proffered evidence of complainant's prior cohabitation with two men did not have sufficient probative value in the context of this case to permit its introduction on the issue of whether or not she consented to sexual relations with this defendant.[4]

Isolated instances of cohabitation as distinguished from evi-

---

[4] For an exhaustive treatment of the subject of the admissibility of prior sexual activity, and current legislation limiting examination into a complainant's chastity, see Comment, 43 U. of Chi. L. Rev. 613, 620.

dence of promiscuity, do not in themselves lend credence to a claim of consent such as defendant here raises. Accordingly, we reject the contention that complainant's prior unchastity is material to the question of whether she consented to a sexual encounter in a parking lot with a total stranger in the middle of the night after an acquaintance of only momentary duration. In our opinion it would have been error for the trial court to have admitted such evidence under these circumstances. It is, therefore, not necessary to address ourselves to constitutional questions which may arise in the future by the application of the statute to different fact situations.

■ In urging that the evidence does not support the verdict, the defendant calls attention to a number of facts which are exculpatory in nature. The police officer who observed complainant being carried across the parking lot saw no indication of resistance or struggle at that time and had no reason to believe she was not acting in a voluntary manner. He took no immediate steps to intervene. The complainant said nothing to the doctor about the four or five blows to her head which she claims defendant inflicted. There were no signs of injury in her vaginal area to suggest that intercourse was accomplished by force. There was no evidence that her clothing was ripped or torn as might be expected if they were violently removed. Complainant suffered a lapse of memory from the time she fell asleep in the car until she claims she revived across the street with defendant on top of her. The defendant stated to the authorities that complainant had called him "Bruce," which was the name of a man with whom she was acquainted.

Notwithstanding such evidence, the jury had a right to accept the testimony of the complainant that she was drunk when she was first confronted by the defendant, and that consequently she had no recollection of the events which occurred immediately prior to the sexual assault. A criminologist for the St. Paul Police Department testified that he found human sperm in both the complainant's underclothing and that of the defendant. The

evidence of a rather severe contusion which the examining doctor found behind her ear, 4 centimeters in diameter, was also a matter which the jury could consider in assessing complainant's testimony. They could also find that she was in a drunken stupor until she suddenly realized her predicament, when she began to scream, and defendant held his hand over her mouth, events corroborated by a police officer. There was testimony that she became hysterical, and that defendant was either running or trotting from the scene when apprehended. Taking the evidence as a whole, we cannot say as a matter of law that it was insufficient to permit a jury to find defendant guilty.

Affirmed.

### APPENDIX

Minn. St. 609.347 provides:

"Subdivision 1. In a prosecution under sections 609.342 to 609.346, the testimony of a complainant need not be corroborated.

"Subd. 2. In a prosecution under sections 609.342 to 609.346, there is no need to show that the complainant resisted the actor.

"Subd. 3. In a prosecution under sections 609.342 to 609.346, evidence of the complainant's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order under the procedure provided in subdivision 4, and only to the extent that the court finds that any of the following proposed evidence is material to the fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

"(a) When consent or fabrication by the complainant is the defense in the case, evidence of such conduct tending to establish a common scheme or plan of similar sexual conduct under circumstances similar to the case at issue on the part of the complainant, relevant and material to the issue of consent or fabrication. Evidence of such conduct engaged in more than one year prior to the date of alleged offense is inadmissible;

"(b) Evidence of specific instances of sexual activity showing the source of semen, pregnancy, or disease at the time of the incident or, in the case of pregnancy, between the time of the incident and trial;

"(c) Evidence of the complainant's past sexual conduct with the defendant; .

"(d) For purposes of impeachment, when such evidence is offered to rebut specific testimony of the complainant. ·

"Subd. 4. The defendant may not offer evidence described in subdivision 3 except pursuant to the following procedure:

"(a) A motion shall be made by the defendant prior to trial, unless later for good cause shown, stating to the court and prosecutor that the defendant has an offer of proof of the relevancy of the evidence of the sexual conduct of the complainant which is proposed to be presented;

"(b) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and in such hearing shall allow the defendant to make a full presentation of his offer of proof;

"(c) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the sexual conduct of the complainant is relevant and material to the fact of consent, and is not so prejudicial as to be inadmissible, the court shall make an order stating the extent to which evidence is admissible under subdivision 3 and prescribing the nature of questions to be permitted at trial. The defendant may then offer evidence pursuant to the order of the court;

"(d) If new information is discovered after the date of the hearing or during the course of trial, which may make evidence described in subdivision 3 admissible, the defendant shall make the disclosures under clause (a) of this subdivision and the court shall order an in camera hearing to determine whether the proposed evidence is admissible by the standards herein.

"Subd. 5. In a prosecution under sections 609.342 to 609.346, the court shall not instruct the jury to the effect that:

"(a) It may be inferred that a complainant who has previously consented to sexual intercourse with persons other than the defendant would be therefore more likely to consent to sexual intercourse again; or

"(b) The complainant's previous or subsequent sexual conduct in and of itself may be considered in determining the credibility of the complainant; or

"(c) Criminal sexual conduct is a crime easily charged by a complainant but very difficult to disprove by a defendant because of the heinous nature of the crime; or

"(d) The jury should scrutinize the testimony of the complainant any more closely than it should scrutinize the testimony of any witness in any felony prosecution."