**STATE of Minnesota, Respondent,**

v.

**Dennis Michael HAMILTON, Appellant.**

**No. 47695.**

Supreme Court of Minnesota.

Nov. 23, 1979.

C. Paul Jones, Public Defender, and Phebe S. Haugen, Sp. Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen. and Norman B. Coleman, Jr., Sp. Asst. Atty. Gen., St. Paul, R. Kathleen Morris, County Atty., Shakopee, for respondent.

Heard before YETKA, SCOTT, and MAXWELL, JJ., and considered and decided by the court en banc.

STEPHEN L. MAXWELL, Justice.*

In this appeal from jury convictions for criminal sexual conduct in the third degree, aggravated assault, and aggravated sodomy, defendant, Dennis Michael Hamilton, raises, among other issues, the question which we did not reach in *State v. Hill*, 309 Minn. 206, 244 N.W.2d 728 (1976): whether defendant's constitutional right of confrontation was abridged by the trial court's denial of defendant's request to cross-examine complainant concerning her prior sexual conduct where the defense is consent. Finding no denial of defendant's right of confrontation, we affirm the convictions for criminal sexual conduct in the third degree and aggravated assault, reverse the conviction for aggravated sodomy and dismiss the count, and vacate the sentence for aggravated assault.

The defense being consent, the facts are disputed. It is agreed that complainant, and defendant, Dennis Hamilton, both were employed as laborers at the Minnesota Valley Restoration Site in Shakopee during the summer of 1976 and were acquainted with each other. They had worked together on a project which involved tearing down a brick firehouse in Belle Plaine and transporting it to the restoration site. Complainant resided on the second floor of Tabacca House, one of the homes being restored at the site. Defendant, his fiancee, and co-defendant James Dellwo lived in Harms House, another one of the homes being restored at the site.

Complainant testified that on August 9, 1976, having been away from the site during the evening, she returned to Tabacca House between 9:30 and 10 p. m., went directly to her room, and locked her door with a 3-inch slip-bolt lock that she had previously installed. She stripped down to her underpants, got in bed, and fell asleep.

The next thing she remembered was being awakened about 2 a. m. by the sound of voices and footsteps coming up the stairs outside her room and hearing the comment, "Keep it light, Bro," a phrase habitually used by James Dellwo. The door of her room then crashed open;[1] the lights were turned on, and she saw Hamilton and Dellwo standing in her room. The two men ran to her bed and tore off her covers. Defendant assaulted her with a stick which complainant kept nearby for warding off mice. Then, with Dellwo holding her one leg and arm, defendant forced her to engage in sexual intercourse. Complainant testified that she then broke free of defendant and Dellwo and ran naked and barefooted out of the room, down the stairs, and outside. She ran "full tilt" over a rough path toward Harms House, which was about 60 to 75 yards away. Defendant and Dellwo gave chase and caught up to her when she tripped. They hit and kicked her and dragged her back to Tabacca House. All the while complainant was screaming and struggling. They took her back to her bedroom, where defendant forced her to perform oral sodomy. After defendant left the room and when Dellwo, who had been holding complainant's wrists and muttering about cigarettes, released her, complainant grabbed her guitar case and the clothes which were thrown over it, and ran out of the room, saying that she would get Dellwo some cigarettes. She pulled on her pants as she left the room, ran downstairs to her car (parked in front of Tabacca House), and drove "eighty five all the way" to a former

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.Stat. § 2.724, subd. 2 (1978).

1. The broken slip-bolt lock was introduced into evidence along with a photograph of its pieces remaining on the frame and door.

boyfriend's house in Burnsville. She told him that defendant and Dellwo had raped her, and the police were called.

Defendant related a different version of what happened, claiming consent. Defendant testified that he met complainant in late June 1976, when she started working at the restoration site. She was very friendly toward him; she would open her halter top in his view and would give him "great big hugs."

About a week before the incident, according to defendant, a person in authority at the restoration site accused him of having had sex with complainant the previous night. That same day or the next day, defendant saw complainant, who said, "Seeing how we are being blamed for getting it on [having sex], why don't we get it on?" Defendant replied, "That is all right by me," and left it at that.

Defendant then testified that on the morning of August 9, 1976, he and Dellwo saw complainant in front of Harms House, where she gave both of them a big hug and kiss and "really put everything into it." He next saw her shortly after 1 a.m. on August 10, when he, his fiancee, and Dellwo returned to the site after visiting with Dellwo's relatives. Defendant talked with other residents of the site while Dellwo went inside Tabacca House. Defendant said he "figured [Dellwo] must be going up to see Sharon. Her car was there." When the others left, defendant entered Tabacca House, went upstairs, found the door to complainant's bedroom open, her light on, and observed her performing oral sodomy on Dellwo.

Defendant then testified that he "figured her offering me to be getting it on with her

I thought that this was the time that she was probably wanting to," so he took off his clothes and laid on her bed while she was performing fellatio on Dellwo. Then, according to defendant, Dellwo got up and asked for cigarettes; complainant said that she had none; Dellwo then put on his clothes and left the room. While Dellwo was getting dressed, complainant and defendant had sexual intercourse, and defendant had an orgasm. Then, when defendant no longer had an erection, complainant started to perform fellatio, but defendant told her, " 'Look, this probably isn't going to work from here on. There is no sense to even trying.' So then she quit."

Then, according to defendant, he and complainant dressed, and complainant said she was going to get cigarettes for Dellwo. Defendant went downstairs and found Dellwo sitting on the porch. Complainant came outside, said she was going to get some cigarettes, and drove away in her car. Defendant then went to his bedroom in Harms House and went to bed, leaving Dellwo looking for cigarettes in the car of one of complainant's housemates.

At about 5:45 a.m. on August 10, police arrested defendant and Dellwo, defendant in his bed in Harms House and Dellwo in complainant's housemate's car.

Defendant was charged with aggravated assault, aggravated sodomy, and criminal sexual conduct in the first degree and was tried before a jury. During the presentation of the state's case, the judge refused to permit defendant's attorney to cross-examine complainant concerning her previous sexual conduct. But, after an in-camera hearing pursuant to Minn.Stat. § 609.347, subds. 3 and 4 (1978),[2] the trial judge saga-

2. Minn.Stat. § 609.347 (1978) reads in pertinent part:

Subd. 3. In a prosecution under sections 609.342 to 609.346, evidence of the complainant's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury, except by court order under the procedure provided in subdivision 4, and only to the extent that the court finds that any of the following proposed evidence is material to

the fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) When consent or fabrication by the complainant is the defense in the case, evidence of such conduct tending to establish a common scheme or plan of similar sexual conduct under circumstances similar to the case at issue on the part of the complainant, relevant and material to the issue of consent or fabrication. Evidence of such conduct en-

ciously allowed defendant to present the testimony of seven men, all of whom testified to having had sexual relations with complainant within the six-week period prior to the events of August 10. The state did not rebut that testimony or otherwise deny the prior sexual encounters.

After 11 hours of deliberation, the jury found defendant guilty of criminal sexual conduct in the third degree, Minn.Stat. § 609.344(c) (1978);[3] aggravated assault, Minn.Stat. § 609.225, subd. 2 (1978); and aggravated sodomy, Minn.Stat. § 609.293, subd. 2(1) (2) (1976). He was sentenced to concurrent terms of 10 years' imprisonment for criminal sexual conduct in the third degree, 10 years for aggravated assault, and 20 years for aggravated sodomy.

On appeal from the judgments, defendant (1) argues that the aggravated sodomy statute, Minn.Stat. § 609.293, subd. 2 (1976), was repealed by implication by 1975 Minn. Laws, ch. 374; (2) alleges error in the trial court's application of Minn.Stat. § 609.347 (1978) (the "evidence statute"), to evidence relating to the aggravated sodomy charge under Minn.Stat. § 609.293, subd. 2 (1976); (3) claims reversible constitutional error for violation of his right of confrontation by the trial court's denial of defendant's request to cross-examine complainant concerning her prior sexual conduct; (4) challenges the sufficiency of the evidence to sustain the guilty verdicts; and (5) contends that the separate sentences given for each crime violate the sentencing policy of Minn.Stat. § 609.035 (1978).

We touch on two related issues before we reach the constitutional question.

■ 1. First, defendant contends that the aggravated sodomy statute under which he was convicted, Minn.Stat. § 609.293, subd. 2 (1976), was implicitly repealed by Minn.Laws 1975, ch. 374.[4] We need not rule on this contention in view of our recent decision in *State v. Coolidge*, 282 N.W.2d 511 (Minn.1979). There we held, based on the common law, that where a defendant is convicted under a statute that is subsequently repealed or amended so as to mitigate punishment, the more recent statute will be applied to the acts committed before its effective date, as long as no final judgment has been reached.

In the instant case, the aggravated sodomy statute under which defendant was convicted, Minn.Stat. § 609.293, subd. 2 (1976), was repealed by Minn.Laws 1977, ch. 130, § 10. The conduct which before the 1977 repealer was termed "aggravated sodomy" and was punished with 30 years' imprisonment, now is subsumed under the

gaged in more than one year prior to the date of alleged offense is inadmissible;

\* \* \* \* \*

Subd. 4. The defendant may not offer evidence described in subdivision 3 except pursuant to the following procedure:

(a) A motion shall be made by the defendant prior to trial, unless later for good cause shown, stating to the court and prosecutor that the defendant has an offer of proof of the relevancy of the evidence of the sexual conduct of the complainant which is proposed to be presented;

(b) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and in such hearing shall allow the defendant to make a full presentation of his offer of proof;

(c) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the sexual conduct of the complainant is relevant and material to the fact of consent, and is not so prejudicial as to be inadmissible, the court shall make an order stating the extent to which evidence is admissible under subdivision 3 and prescribing the nature of questions to be permitted at trial. The defendant may then offer evidence pursuant to the order of the court.

3. The jury acquitted defendant of criminal sexual conduct in the first degree as charged.

4. Minn.Laws 1975, ch. 374, was a general revision of the rape statutes. Under the term "sexual penetration" the legislature extended the prohibited acts to include "cunnilingus, fellatio, and intercourse, or any intrusion however slight into the genital or anal openings of the complainant's body of any part of the actor's body or any object used by the actor for this purpose, where the act is committed without the complainant's consent \* \* \*." Minn. Laws 1975, ch. 374, § 2. The legislature retained the corresponding proscription against non-consensual sodomy in Minn.Stat. § 609.-293, subd. 2 (1976), until the repealer of Minn. Laws 1977, ch. 130, § 10.

criminal sexual conduct statutes, Minn.Stat. §§ 609.341 et seq. (1978) (under which defendant was also charged) and is punishable with a maximum of 20 years' imprisonment as criminal sexual conduct in the first degree. Of course judgment is not yet final in defendant's case. Thus, following our holding in *Coolidge, supra,* we reverse the conviction for aggravated sodomy and direct the district court to order the sentence vacated.

2. Second, defendant contends that the trial court erred in applying the "evidence statute," Minn.Stat. § 609.347 (1978), to limit cross-examination of complainant concerning her previous sexual conduct solely as it related to the sodomy charge under Minn.Stat. § 609.293, subd. 2 (1976). Because we reverse the conviction and vacate the sentence of the count charged under § 609.293, subd. 2, we need not rule on this contention.

3. Defendant's major contention is that the trial judge denied his constitutional right of confrontation, guaranteed by U.S. Const. amend. VI and Minn.Const. art. 1, § 6,[5] by denying defense counsel's request to cross-examine complainant concerning her previous sexual conduct.[6] In the context of this case, we do not agree.

■ The right to confrontation "includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i. e., discredit, the witness." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). However, "[t]he right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. * * * But its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

■ In this case, the trial judge struck a fair and appropriate balance between the rights of confrontation and presenting a defense protected by the Sixth Amendment and the policy expressed in *State v. Zaccardi,* 280 Minn. 291, 159 N.W.2d 108 (1968), and implicit in Minn.Stat. § 609.347 (1978), of protecting the complaining witness from perhaps irrelevant and unnecessary "besmirching of her character for chastity * * *." 280 Minn. 295, 159 N.W.2d 110.[7]

---

5. The Sixth Amendment to the United States Constitution and Minn.Const. art. 1, § 6, guarantee to every criminal defendant "[t]he right * * * to be confronted with the witnesses against him * * *."

Presented with different facts, we declined to decide the confrontation question in *State v. Hill,* 309 Minn. 206, 244 N.W.2d 728 (1976), cert. den., 429 U.S. 1065, 97 S.Ct. 794, 50 L.Ed.2d 782 (1977). In *Hill* we held that the trial court did not err in refusing to permit cross-examination of the complainant concerning two prior isolated incidents of cohabitation because the proffered evidence did not have sufficient probative value in the context of that case to permit its introduction on the issue of whether she consented to sexual relations.

6. On direct examination, the complainant testified that she lied when she told the doctor, who examined her shortly after the incident on August 10, that she had had sexual intercourse only once before that incident, because, in complainant's words, "I have a very strict mother and it would really hurt her if she knew that I had [sexual intercourse] more than once." The complainant then testified that she later told the doctor the truth about her previous sexual experience. On cross-examination, defense counsel sought to question the complainant concerning "the number of times she told the doctor she had sexual intercourse, how many times, who she had it with, what kind of sexual intercourse, where and when." The request was denied.

7. In *State v. Zaccardi,* 280 Minn. 291, 295, 159 N.W.2d 108, 110 (1968), a rape prosecution, during the cross-examination of the complain-

The record demonstrates that defense counsel extensively cross-examined complainant concerning her account on direct examination of the events charged in the complaint. The jury had ample opportunity to observe the complainant's demeanor on direct and cross-examination and to judge her credibility as a witness. Defendant also had ample opportunity to present his defense of consent and, through his witnesses, to raise the issue of complainant's prior sexual conduct as it relates to the issue of consent. Defendant did not call complainant to testify as part of his case-in-chief, and the state did not offer complainant's testimony to rebut the prior instances of sexual encounters to which the defense witnesses testified. Rather, the prosecutor questioned the relevance of that testimony to the issues of the prosecution.[8] In view of the state's failure to deny the complainant's prior sexual encounters, and the defense attorney's extensive cross-examination of complainant concerning her direct testimony, we conclude that defendant's right of confrontation was not prejudiced by the trial court's denial of defendant's request to cross-examine complainant concerning her prior sexual conduct.[9]

4. Defendant also argues that the evidence was insufficient to sustain the guilty verdicts. On appeal, this court will hold the evidence sufficient to sustain a guilty verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it with proof beyond a reasonable doubt of each element of the crime, could reasonably conclude from the evidence contained in the record that the defendant was guilty of the offenses of which he was convicted. *State v. Norgaard*, 272 Minn. 48, 136 N.W.2d 628 (1965). Ordinarily we will view the evidence in the light most favorable to the state, assuming that the jury believed the state's witnesses and disbelieved anything which contradicted their testimony. *State v. Hawkins*, 260 N.W.2d 150 (Minn.1977). Applying the foregoing to the record before us, we hold that the evidence supports the verdicts.

Complainant testified unequivocally to defendant's use of force, her lack of consent, her resistance, and the use of a stick to "strangle" her. Defendant admitted sexual penetration. Thus, the element of the crimes of criminal sexual conduct in the

ant the trial court sustained the state's objection to defense counsel's question concerning her prior chastity, and the defendant did not pursue the matter or make an offer of proof with respect to the issue of chastity. In those circumstances we agreed with the dissenting view of Judge Sanborn in *Packineau v. United States*, 202 F.2d 681, 689 (8th Cir. 1953), who wrote: "If a defendant * * * has evidence that the prosecutrix was an immoral woman (either generally or specifically) who probably put up no resistance to his advances, the proper time for him to offer such evidence is in defense. Even an immoral woman has some freedom of selection, * * *."

See also, Hibey, *The Trial of a Rape Case: An Advocate's Analysis of Corroboration, Consent, and Character*, 11 Am.Crim.L.Rev. 309 (1973); *Limitations on The Right to Introduce Evidence Pertaining to The Prior Sexual History of The Complaining Witness in Cases of Forcible Rape: Reflection of Reality or Denial of Due Process?* 3 Hofstra L.Rev. 403 (1975); Comment, *Toward a Consent Standard in The Law of Rape*, 43 U.Chi.L.Rev. 613 (1976).

8. In her closing argument, the prosecutor reminded the jury that "when we selected you as

jurors * * * we didn't say she [complainant] was a virgin, in fact she had quite an active sex life and you all assured me that her life style wouldn't be on trial here"; and stressed that the prior sexual encounters were consensual, in contrast to the incident with defendant.

9. Existing case law does not dictate a contrary result. Neither *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), nor *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), upon which defendant relies, presents similar circumstances. We acknowledge, as we did, referring to the holding in *Chambers, supra*, in *State v. Hembd*, 305 Minn. 120, 232 N.W.2d 872 (1975), that the right of confrontation is "implicit in the right of cross-examination." 305 Minn. 124, 232 N.W.2d 874. But in the instant case, defendant was not denied the opportunity to effectively cross-examine complainant for bias, as in *Davis, supra*. Nor was defendant completely denied the right to cross-examine complainant as an adverse witness as in *Chambers, supra*.

third degree and aggravated assault [10] were made out by complainant's testimony.

Defendant argues, however, that complainant's testimony alone is insufficient to sustain the verdicts, and that the supporting corroboration testimony was weak. While it is true, as we noted in *State v. Ani*, 257 N.W.2d 699, 700 (Minn.1977), quoting Note, 81 Yale L.J. 1365, 1391 [1972], that "[t]he absence of corroboration in an *individual* case * * * may well call for a holding that there is insufficient evidence upon which a jury could find the defendant guilty beyond a reasonable doubt," this is not such a case. Defendant stresses certain inconsistencies in the state's case: The complainant testified that she screamed throughout the entire incident, but Dr. Barry Bershow, who examined her between 5:30 and 6:45 a. m. on August 10 (soon after the incident), noted no evidence of voice strain. Neither did he find evidence of the kind of struggle and abuse which complainant testified occurred when she ran out of the house and was caught and dragged back to her second-floor bedroom, resisting all the way. However, the jury was entitled to believe complainant's story and to disbelieve defendant's account. *State v. Hawkins, supra; State v. Norgaard, supra.*

Nor is this case one in which the evidence to overcome the presumption of innocence is completely dependent upon a single witness whose testimony, considered in the light of the record as a whole, is of dubious veracity, and where a careful scrutiny of the record creates grave doubts of the defendant's guilt. *State v. Kemp*, 272 Minn. 447, 138 N.W.2d 610 (1965). Despite the minor inconsistencies in the state's case and the relative inconclusiveness of the supporting evidence, we defer to the jury's right to believe the complainant and disbelieve the defendant and hold that the evidence was sufficient to sustain the verdicts of guilt beyond a reasonable doubt.[11]

[7] 5. Lastly, defendant contends that the trial court violated Minn.Stat. § 609.035 (1978)[12] by sentencing defendant separately though concurrently, for each offense. We have already directed the district court to vacate the 20-year sentence given for aggravated sodomy, *supra*, and the state does not contest vacating the sentence given for aggravated assault. We agree that the conduct constituting aggravated assault was motivated by defendant's desire to commit an act of criminal sexual conduct and thus was part of a single, unitary, behavioral incident. *State v. Koonsman*, 281 N.W.2d 487 (Minn.1979); *State v. Carr*, 263 N.W.2d 816 (Minn.1978); *State v. Gilbert*, 262 N.W.2d 334 (Minn.1977). Therefore, as indicated above, we apply the sentencing restriction of Minn.Stat. § 609.035 (1978), and vacate the sentence of 0 to 10 years[13] given for aggravated assault. *State v. Koonsman, supra.*

Affirmed in part and reversed in part.

---

10. The pertinent statutes read in relevant part:

> 609.344: A person is guilty of criminal sexual conduct in the third degree and may be sentenced to imprisonment for not more than ten years, if he engages in sexual penetration with another person and any of the following circumstances exists:
>
>     *   *   *   *   *
>
> (c) The actor uses force or coercion to accomplish the penetration; * * *.
>
> 609.225: Whoever assaults another with a dangerous weapon but without inflicting great bodily harm may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both.

11. Our review of the record indicates that the case was scrupulously tried by both the state and the defense.

12. Minn.Stat. § 609.035 (1978), provides, with an exception not relevant here, that "if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts."

13. The count of aggravated assault was originally charged under Minn.Stat. § 609.225 (1976) and called for a 10-year sentence. The complaint was later amended to § 609.225, subd. 2 (1978), which calls for a 0 to 5-year sentence. Thus, the 10-year sentence given by the trial court was in error.