STATE of Minnesota, Respondent,

v.

L.D. Todd TAYLOR, Appellant.

No. C0–83–1759.

Court of Appeals of Minnesota.

Aug. 21, 1984.

Review Denied Oct. 30, 1984.

**657**

Hubert H. Humphrey, III, State Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Ann Remington, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and LESLIE and SEDGWICK, JJ. with oral argument waived.

## OPINION

SEDGWICK, Judge.

Defendant Taylor appeals his conviction of two counts of criminal sexual conduct in the first degree. He maintains the sexual activity was consensual. The victim maintains it was at gun point. The evidence is sufficient to support the jury verdict. We affirm.

## ISSUES

1. Was the evidence sufficient to sustain the verdict?

2. Did the trial court err in prohibiting the defense from introducing evidence of victim's pending criminal charges, questioning the victim about an abusive boyfriend and allowing the state to argue in closing that the victim had no reason to lie?

## FACTS

About 5:00 p.m. on June 10, 1983, the complainant Lannie Crossland was unable to start her car. Defendant was driving by, observed her standing by the car and stopped. He tried unsuccessfully to start the car and, according to him, agreed to go to his home, get tools and fix it in exchange for sexual intercourse with her. He maintains she agreed. She admits agreeing to go to his house for tools, but says that sex was never mentioned.

Crossland got into defendant's car. They took her small daughter to her sister-in-law's house and at the victim's request stopped at a restaurant so she could take out some food. After they arrived at defendant's house, they went downstairs to defendant's bedroom. Defendant maintains she willingly had intercourse. Crossland testified that as soon as he mentioned sex she immediately requested that he take her back to her sister-in-law's house. She testified that he pointed a shotgun at her. He testified he pulled the sawed-off shotgun from under his pillow and laid it next to his bed while he continued to have sex with her with her permission.

Appellant's cousin and his wife knocked on the bedroom door during these activities. The door opened. The cousin testified he observed defendant and Crossland sitting on the bed watching TV and that Crossland had shorts on. His wife testified they were both naked, were having sexual relations, and that the TV was off.

Appellant's sister-in-law, who was upstairs on the night of June 10th, testified she never saw the cousin and his wife that night.

Appellant's mother had come in the house sometime during the evening and was upstairs when appellant left the house to drive Crossland to her sister-in-law's house. The victim did not tell defendant's mother about the rape because the mother was drunk and cussing.

As soon as Crossland got to her sister-in-law's she reported the rape and called the police.

At trial, Crossland's former employer testified that she had a bad reputation for truthfulness and that he would not believe her testimony under oath. The basis for this testimony, which was not revealed to the jury, was Crossland's forgery of over $10,000 in checks while she was employed with his company. The trial court denied the defense pretrial motion to introduce evidence of the pending criminal charge. The defense was also prevented from cross examining Crossland about prior beatings she had received from her boyfriend. This testimony would allegedly show her motive to falsify testimony to avoid another beating if the boyfriend found out she voluntarily had sex with appellant. The evidence of the criminal charge would allegedly show her motive in testifying was to get favorable treatment from the state in her criminal case.

## ANALYSIS

Appellant alleges insufficiency of the evidence.

On appeal, this court will hold the evidence sufficient to sustain a guilty verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it with proof beyond a reasonable doubt of each element of the crime, could reasonably conclude from the evidence contained in the record that the defendant was guilty of the offenses of which he was convicted. *State v. Norgaard*, 272 Minn. 48, 136 N.W.2d 628 (1965). Ordinarily we will view the evidence in the light most favorable to the state, assuming that the jury believed the state's witnesses and disbelieved anything which contradicted their testimony. *State v. Hawkins*, 260 N.W.2d 150 (Minn.1977). *State v. Hamilton*, 289 N.W.2d 470, 476 (Minn.1979).

Applying the foregoing to the record before us, we hold that the evidence supports the verdicts.

■ Here, the testimony of complainant's comfortable behavior with appellant prior to the offense, i.e., dropping the child off at her sister-in-law's, picking up food to eat at appellant's place, is consistent with her testimony that she only expected to pick up tools at his house and get her car fixed. The jury could well have believed that her story, as well as her behavior after the offense, was consistent with a rape. She made no mention of the rape to defendant's mother, because the mother was drunk and hostile, but reported it immediately to her sister-in-law and the police. She was distraught and crying as soon as she was able to get away from defendant.

The jury obviously believed the state's witnesses, and disbelieved defendant's. Considering the discrepancies in defense witnesses' testimony, the jury acted logically.

■ The defense alleges the trial court erred in not allowing evidence of her pending forgery charges, claiming that "Ms. Crossland was shading her testimony to please the state." It is difficult to follow this logic. Crossland was not a co-defendant of appellant, hoping for a reduced charge or sentence if she testified against him. She was the victim of a rape by defendant. There was no error in disallowing this evidence.

■ The trial court properly sustained, as irrelevant, the state's objection to the following question:

Q. (defense counsel) You have been the subject of physical abuse by men in the past, haven't you?

■ Finally, appellant alleges the trial court erred in not precluding the prosecutor from arguing in closing that Crossland had no reason to lie. To put the picture in

perspective as the jury saw it, the following closing argument was given by the defense.

MR. BUSH: Another thing that the judge will tell you about is assessing the credibility of a witness. Actually, I believe the judge told you this at the beginning of the trial. It is the frankness and candidness with which the witness answers questions. And in looking at this frankness and candidness with which the witness answers questions, remember Lannie Crossland's testimony when I asked her about prior misconduct and truthfulness when she was an employee of Berman Buckskin? Was she candid? No, she took the Fifth Amendment. She said, I refuse to answer that on the ground of the Fifth Amendment. The Fifth amendment says, you don't have to answer questions that would incriminate you.

MR. COLISH: Your Honor, I'm going to object to this as to its relevancy.

THE COURT: Sustained as to—

MR. BUSH: Your Honor—

THE COURT: Just a moment, counsel. It's sustained as to instructing the jury on the law. Please don't go into what the Fifth Amendment says.

\*     \*     \*     \*     \*     \*

MR. BUSH: She took the Fifth Amendment. Why? Was that candid? Was that truthful? Was that honest?

MR. COLICH: Your Honor, I'm going to object to any argument on the Fifth Amendment right of a person.

\*     \*     \*     \*     \*     \*

THE COURT: Okay. Sustained, counsel.

What is her motive? There are a number of reasons for motive that we can talk about. Maybe she has a boyfriend that would be upset if she had casual sex.

\*     \*     \*     \*     \*     \*

MR. COLICH: I object to his asking the jury to speculate on evidence not before the court.

THE COURT: The objection is overruled. You may proceed, Mr. Bush.

MR. BUSH: There could be any number of possible motives. A potentially jealous boyfriend, who would be upset if she engaged in casual sex. Potential relatives who would be upset if she engaged in casual sex.   \*  \*  \*

## DECISION

There was sufficient evidence to sustain appellant's conviction. There were no errors in the trial court's evidentiary rulings. Affirmed.