## STATE v. ANDREW ELIAS ANDERSON.

137 N. W. (2d) 781.

November 5, 1965—No. 39,484.

·*Thomas J. Burke,* for appellant.

*Robert W. Mattson,* Attorney General, *Linus J. Hammond,* Assistant Attorney General, and *John E. MacGibbon,* County Attorney, for respondent.

OTIS, JUSTICE.

Defendant appeals from a conviction for committing incest with his 17-year-old daughter. The incidents constituting the crime are alleged by the daughter to have occurred over a period of 5 years, during which time with infrequent exceptions the father, daughter, her two brothers, a sister, and stepmother were living together in close proximity in the same farmhouse. The daughter charges that the acts complained of took place in rooms immediately adjacent to a central kitchen at times when the stepmother was physically present in the home. Nevertheless, there was no corroborative evidence, direct or circumstantial, to prove that the father

actually had relations with her on any specific occasion, let alone "practically every night" as the daughter testified. She charged that the intercourse occurred in her bedroom, her father's bedroom, and in the living room. Yet there was no testimony by either the stepmother, the brothers, or the sister that any of them entertained the slightest suspicion that defendant was guilty of such misconduct during the period it is alleged to have occurred. At most, the stepmother, who was divorced from the defendant at the time of trial, stated she had seen the father improperly fondle his daughter and in her presence enter the daughter's bedroom when she was bathing. The sons not only contradicted this testimony but categorically denied a charge by the daughter that her father had exposed himself in their presence or had made obscene references to their comparative manliness.

This matter represents a classic conflict between a frustrated daughter and an unduly strict father. The record discloses that the father's suspicion that his daughter was having illicit relations with a neighbor boy was subsequently confirmed by a brother. In a fit of anger the father struck her. A few weeks later, she left home, provoking from him an intemperate and vindictive letter accusing her of promiscuity. The fact that she was thus stung by the treatment she had received, considered in the light of a mental or emotional instability which shortly thereafter prompted her confinement for psychiatric treatment, tends to discredit her testimony to a point where, in our opinion, there must be a new trial.

Apart from the fact that the father had remarried before his divorce was final and as a result was convicted of bigamy, the evidence discloses no prior record whatever of any sexual aberration or any other history reflecting on his character. During all of this 5-year period when the daughter claims her father had intercourse with her "practically every night," she made no complaint to her friends, her teachers, her stepmother, her brothers, her aunts, or any other relative in whom it would be natural to confide, notwithstanding the fact she knew "it wasn't right" and testified she "fought back." Her testimony indicates that no measures whatever were taken to prevent conception, yet she never became pregnant. Nor did the state produce any medical testimony to prove

through a physical examination that the daughter had ever previously had sexual intercourse with anyone.[1]

■ The problems inherent in cases of this kind have not been better stated than by Mr. Justice Mitchell in State v. Connelly, 57 Minn. 482, 485, 59 N. W. 479, 481:

"* * * There is no rule of law which forbids a jury to convict of rape on the uncorroborated evidence of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony. But the courts have always recognized the danger of convicting on her uncorroborated evidence, for, in the language of Lord Hale, *'it is an accusation easily made, hard to be proved, and still harder to be disproved by one ever so innocent.'*

"Where the testimony of the prosecutrix is uncorroborated, and bears some intrinsic evidence of improbability, courts have sometimes refused even to submit it to the jury. In some states, corroborating evidence is required by statute.

"Where the charge is true, there will almost always be some corroborating evidence, such as injury to the person or clothing of the prosecutrix, or the fact that she made complaint as soon as practicable, and without unreasonable delay. While the rule requiring immediate complaint is not inflexible, yet the unexplained failure to do so is always considered a very important fact. It is so natural as to be almost inevitable that a female upon whom the crime has been committed will make immediate complaint, if she have a mother or other confidential friend to whom she can make it. The rule is founded upon the laws of human nature. * * *

\* \* \* \* \*

"*The crime is so abhorrent that, to some minds, to charge a person with it, raises a presumption of guilt. It is human nature to incline to the story of the female, especially if a young girl.* But, while virtue and veracity are the rule with them, yet even young girls, like older females, sometimes concoct an untruthful story to conceal a lapse from virtue.

---

[1] People v. Porcaro, 6 N. Y. (2d) 248, 251, 189 N. Y. S. (2d) 194, 196, 160 N. E. (2d) 488, 489; People v. Oyola, 6 N. Y. (2d) 259, 260, 189 N. Y. S. (2d) 203, 205, 160 N. E. (2d) 494, 496.

"Hence all the authorities agree that this is a crime requiring special scrutiny by the jury, and a careful weighing of the evidence and all remote and near circumstances and probabilities in cases where the testimony of the female is not corroborated, and especially where the testimony is at all improbable or suspicious." (Italics supplied.)

In recognition of the role which psychological factors play in provoking charges of sexual misconduct, there is a marked trend on the part of many courts and legislatures to insist on corroboration in prosecutions for such offenses.[2]

The considerations which have prompted these safeguards have been thoroughly considered by Dean Wigmore in 3 Wigmore, Evidence (3 ed.)

---

[2] People v. Oyola, 6 N. Y. (2d) 259, 262, 189 N. Y. S. (2d) 203, 205, 160 N. E. (2d) 494, 496; 26 Brooklyn L. Rev. 135. State v. Witmer, 174 Neb. 449, 455, 118 N. W. (2d) 510, 514, a strikingly similar case, held:

"* * * Judith [aged 17] alleges that defendant had frequent acts of sexual intercourse with her for 3 or 4 years and admits that she complained to no one, not even to her mother.

"The crime charged against the defendant, if true, indicates complete moral depravity. It offends the moral senses of the public from which juries are drawn and tends to create sympathy for a young girl alleging a grievance of this magnitude against her own father. The penalty for such a crime is commensurate with the nature of the crime and, if the crime be established, a severe penalty is required to be assessed. But a defendant cannot be properly convicted on the evidence of the prosecutrix alone. There must be corroborative evidence pointing to the guilt of the defendant of the specific crime charged. In the absence of sufficient corroborating evidence, the protection of the innocent demands that the prosecution must fail for want of competent proof. We find the evidence of corroboration to be insufficient to sustain a finding of guilt by a jury beyond a reasonable doubt."

See, also, Foster and Freed, *Offenses Against the Family*, 32 U. of Mo. at Kansas City L. Rev. 33, 60; Savage, *Corroboration in Sexual Offences*, 6 Criminal L. Q. 282, 310; Williams, *Corroboration—Sexual Cases*, 1962 Criminal L. Rev. 662:

"On a charge of a sexual offence, such as rape, indecent assault, or homosexual offence, it is the practice to instruct the jury that it is unsafe to convict on the uncorroborated evidence of the alleged victim. There is sound reason for this, because sexual cases are particularly subject to the danger of deliberately false charges, resulting from sexual neurosis, phantasy, jeal-

§ 924a, to which we have made passing reference in State v. Wulff, 194 Minn. 271, 274, 260 N. W. 515, 516:

"* * * Modern psychiatrists have amply studied the behavior of errant young girls and women coming before the courts in all sorts of cases. Their psychic complexes are multifarious, distorted partly by inherent defects, partly by diseased derangements or abnormal instincts, partly by bad social environment, partly by temporary physiological or emotional conditions. One form taken by these complexes is that of contriving false charges of sexual offences by men. The unchaste (let us call it) mentality finds incidental but direct expression in the narration of imaginary sex-incidents of which the narrator is the heroine or the victim. On the surface the narration is straightforward and convincing. *The real victim, however, too often in such cases is the innocent man; for the respect and sympathy naturally felt by any tribunal for a wronged female helps to give easy credit to such a plausible tale."* (Italics supplied.)

Dean Wigmore in support of his views quotes the following from Dr. Karl A. Menninger (p. 463):

"Every girl who enters a plausible but unproved story of rape should be required to have a psychiatric examination. As you know, I have elsewhere expressed myself publicly as favoring the psychiatric examination of criminals and those charged with crime, and I agree with you that this should be extended to include some of the individuals who make criminal charges, not only of rape but also of malpractice and other personal attacks. The reason I think that rape in particular belongs in this category is one well known to psychologists, namely, that fantasies of being raped are exceedingly common in women, indeed one may almost say that they are probably universal. By this I mean that most women, if

---

ousy, spite, or simply a girl's refusal to admit that she consented to an act of which she is now ashamed. Of these various possibilities, the most subtle are those connected with mental complexes."

The Arizona court has observed (Power v. State, 43 Ariz. 329, 332, 30 P. [2d] 1059, 1060): "If proof of opportunity to commit a crime were alone sufficient to sustain a conviction, no man would be safe."

7 Wigmore, Evidence (3 ed.) § 2062; Annotations, 60 A. L. R. 1124 and 74 A. L. R. (2d) 705.

we may judge from our clinical experience, entertain more or less consciously at one time or another fleeting fantasies or fears that they are being or will be attacked by a man. Of course, the normal woman who has such a fantasy does not confuse it with reality, *but it is so easy for some neurotic individuals to translate their fantasies into actual beliefs and memory falsifications that I think a safeguard should certainly be placed upon this type of criminal charge.*" (Italics supplied.) [3]

■ In an atmosphere as highly charged with emotion as the prosecution of a father for violating his daughter, where the corroboration is as deficient as in this case, we consider an incident in which the clerk of court wept openly in the presence of the jury as a matter of serious consequence. While ordinarily it would probably not be sufficient to warrant a new trial, considered with what we regard as inadequate proof of the crime, we find it constitutes substantial prejudice. State v. Schwartz, 266 Minn. 104, 113, 122 N. W. (2d) 769, 775.

We have held in a long line of cases that where this court entertains grave doubt as to defendant's guilt the interests of justice require that there be a new trial.[4] This is such a case. We believe a conviction under the circumstances recited can only be sustained upon clear and convincing evidence which we find lacking in this record.[5] We have considered the other assignments of error and find them to be without merit.

Reversed and new trial granted.

---

[3] See, also, Overholser, *Psychiatry's Contributions to Criminal Law and Procedure*, 12 Okla. L. Rev. 13, 22.

[4] State v. Iago, 66 Minn. 231, 68 N. W. 969; State v. Cowing, 99 Minn. 123, 108 N. W. 851; State v. McLarne, 128 Minn. 163, 168, 150 N. W. 787, 789; State v. Steeves, 130 Minn. 53, 152 N. W. 1103; State v. Jacobson, 130 Minn. 347, 352, 153 N. W. 845, 847; State v. Edmons, 132 Minn. 465, 156 N. W. 1086; State v. Nyhus, 176 Minn. 238, 222 N. W. 925; State v. Wulff, 194 Minn. 271, 273, 260 N. W. 515, 516; State v. Star, 248 Minn. 571, 81 N. W. (2d) 94. See, also, People v. Casillas, 60 Cal. App. (2d) 785, 794, 141 P. (2d) 768, 772.

[5] People v. Christie, 16 App. Div. (2d) 598, 600, 229 N. Y. S. (2d) 779, 781; People v. Griffin, 17 App. Div. (2d) 658, 230 N. Y. S. (2d) 354; Louis v. State, 92 Okla. Cr. 156, 167, 222 P. (2d) 160, 165; Foster and Freed, *Offenses Against the Family*, 32 U. of Mo. at Kansas City L. Rev. 32, 47.