## STATE v. RICHARD MITCHELL KEMP.

138 N. W. (2d) 610.

December 3, 1965—Nos. 39,217, 39,613.

*O. C. Adamson II* and *Meagher, Geer, Markham & Anderson,* for appellant.

*Robert W. Mattson,* Attorney General, *George M. Scott,* County Attorney, and *Theodore R. Rix,* Assistant County Attorney, for respondent.

ROGOSHESKE, JUSTICE.

Defendant's appeal from a judgment of conviction for robbery in the first degree and from an order denying a motion for a new trial based upon newly discovered evidence presents the question of whether defendant was denied a fair trial because of procedural and evidentiary deficiencies appearing in the record before us.

The record conclusively shows that Dave Goldberg, a managing partner of a shoe repair and shoeshine establishment known as Dave's Shoe Repair in Minneapolis, was severely beaten and robbed of about $600 between 7 and 8 p. m. on April 28, 1962.

Mr. Goldberg's complaint, signed 2 months later on June 29, 1962, accused the defendant, who had been employed by him for 11 months preceding Thanksgiving Day 1961, of committing the crime. He was arrested in December 1962 and bound over to stand trial after a preliminary hearing held on January 16, 1963. Following trial on February 6 and 7, 1963, the jury found him guilty of first-degree robbery.

Mr. Goldberg was the only witness who identified defendant as the culprit. Except for evidence tending to support a finding of motive and bad feeling toward Goldberg and the testimony of a parking-lot attendant who observed an unidentified "colored" person near the store in the early evening, his testimony is uncorroborated. Defendant's testimony is diametrically opposite. In denying that he committed the assault and robbery, he characterized Goldberg's identification as "fantastic." Denying that he was "treated pretty nice" during his employment as a shoeshiner, he testified that he quit because there was seldom a day without argument over the amount of his pay and because of complainant's abusive

treatment of himself and other shoeshiners. His testimony that at the time of the robbery he was nowhere near the scene but was at the residence of Eartha Washington, a lady friend, was corroborated by the latter. It is clear from the record that defendant's conviction rests solely on the veracity of complainant's testimony.

Defendant being indigent, the public defender was appointed to represent him. He assigned different attorneys to represent defendant at the preliminary hearing and at trial. For reasons unexplained, a transcript of the preliminary hearing was not secured for use at trial. It was only after this appeal was perfected that appellate counsel, appointed by this court, obtained that transcript.

Material inconsistencies between the sworn testimony of Goldberg at trial and at the preliminary hearing, both as to identification and the details of the alleged hour-long assault, as well as claimed newly discovered testimony of a "disinterested" third party corroborating defendant's alibi provided the grounds for defendant's motion for a new trial. This motion was heard and denied by the trial court upon a remand from this court.

Our careful scrutiny of the record creates in our minds grave doubts of defendant's guilt. We are thus governed by the rule applied in similar cases that where such uncertainty exists the interests of justice require a new trial.[1] While the record is free from technical errors and we deem it improper to discuss the evidence in detail, it is our opinion that the jury was not given the opportunity by way of easily available and material prior inconsistent statements to adequately test the veracity of Goldberg's unimpeached testimony. It would seem especially important that the jury should have heard his explanation of the substantial variance between his sworn testimony at preliminary hearing and at trial concerning the reasons for his refusal or inability to promptly identify defendant, and the part his claimed assurances from the prosecution that they wanted

---

[1] State v. Anderson, 272 Minn. 384, 137 N. W. (2d) 781; State v. Warren, 252 Minn. 261, 89 N. W. (2d) 702; State v. Edmons, 132 Minn. 465, 156 N. W. 1086; State v. Jacobson, 130 Minn. 347, 352, 153 N. W. 845, 847; State v. Steeves, 130 Minn. 53, 152 N. W. 1103; State v. McLarne, 128 Minn. 163, 168, 150 N. W. 787, 789; 5 Dunnell, Dig. (3 ed.) § 2490.

to "get this man" played in inducing him to identify defendant as the assailant. In addition, there are also material variances in complainant's testimony concerning the details of the crime, which, if presented to the jury, certainly would have had a significant bearing on the believability of his identification testimony. Finally, defendant submitted lengthy affidavits in support of his motion for a new trial. These set forth in much greater detail than his testimony at trial his activities during the afternoon and evening of the day of the crime. Included was an affidavit of a claimed disinterested third party who vouched for defendant's presence elsewhere, but who was not called to testify in his behalf. Apart from Goldberg's trial testimony, the state made no effort to refute the facts recited. We cannot say that the court erred in refusing to regard the many facts not given to the jury as newly discovered evidence justifying a new trial. However, they do demonstrate that the jury received only part of the available evidence and therefore decided the case without the benefit of the evidence which could have been presented had the additional alibi witness been called as well as others who defendant claimed were with him in the late afternoon before he visited Mrs. Washington. Surely the jury's confidence in complainant's testimony would have been affected, and doubtless more so if impeachment had been attempted.

Mindful of the seriousness of the charge and of our rules governing the restraint which should be exercised in reversing a criminal conviction, we cannot escape our duty to do so where it is made to appear that the evidence to overcome the presumption of innocence is so completely dependent upon a single witness whose testimony, considered in the light of the record as a whole, is of dubious veracity.[2] The interests of justice and the rights of the defendant require that all available evidence ought to be submitted to another jury before he is deprived of his liberty.

Reversed and new trial granted.

---

[2] Cf. State v. Warren, *supra.*