**STATE of Minnesota, Respondent,**

v.

**Steven Paul GARCIA, Appellant.**

**No. C7–85–290.**

Court of Appeals of Minnesota.

Sept. 17, 1985.

Review Denied Nov. 1, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, Minnesota Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Appellant Steven Garcia was found guilty of criminal sexual conduct in the third degree and sentenced to 120 months, an upward departure of 23 months. Appellant argues (1) the evidence was insufficient to sustain his conviction, and (2) he was denied a fair trial by admission of character evidence and improper remarks by the prosecutor. Appellant also disputes the upward departure in his sentence.

## FACTS

Lynn Underwood testified that Garcia lured her to Lyons Park in Robbinsdale and sexually assaulted her on August 9, 1984. Lynn is the older sister of Karen Underwood, who had been Garcia's girlfriend. Lynn testified that the assault was an attempt by appellant to get revenge against Karen for breaking off her relationship with him. Garcia admits he had sexual relations with Lynn, but he claims she consented.

Appellant did not want his relationship with Karen to end and repeatedly called her parents' home. Karen's parents advised Garcia that their daughter did not want to see him anymore. On one evening when Garcia came to the Underwood home around midnight, her father called the police.

Appellant was arrested and charged with disorderly conduct. Upon release from jail, Garcia began calling the Underwood home continually in an attempt to reach Karen. The Underwoods were forced to take the phone off the hook each evening so that they could sleep.

On August 8, 1984, Garcia went to the restaurant where Karen worked. Karen stated that Garcia had been drinking and was "acting really weird." She left him at the restaurant and went home. Around midnight she saw appellant cross the street

and enter the back porch of the Underwood home. Karen called the police, but Garcia left before they arrived. The following morning Garcia phoned and said he had done "something really bad" to her sister, Lynn.

Laurie Underwood, another of Karen's sisters, was called by Garcia on August 9, 1984, at 3:00 a.m. He said Karen had been in a head-on car accident and was badly injured. Appellant also called Lynn around 3:00 a.m. at her home where she lived with her fiance, Steven Ballinger, and told her that he and Karen had been in a car accident and that he needed Lynn's help because Karen had injured her leg. When asked where they were, Garcia said he didn't know and hung up. Lynn lay awake until 4:00 a.m. when Garcia called again. He said they were at Twin Lake and they needed her help. Lynn attempted calling her parents home but the phone had been taken off the hook.

Lynn got dressed and drove to Twin Lake where Garcia met her and told her that Karen was back in the woods. Lynn feared that Garcia had killed her sister and was leading her back to the body. In the woods, Garcia grabbed Lynn and began strangling her. He told her that if she cooperated he would not hurt her. He forced his penis into her mouth and then had intercourse with her. Lynn said she did not resist because she was afraid of being killed. Garcia told her the assault was to get revenge against Karen. Garcia also told her that if she turned him in she would have to endure tests and a trial. He reminded her of her marriage which was one month away. He told her that he was leaving town that evening.

Steven Ballinger testified that when Lynn returned home she was crying hysterically and her clothes were torn and dirty. Lynn told Ballinger what happened and that she did not want to report the rape because Garcia was leaving town and she did not want to go through all the procedures.

Garcia did not leave town. He began calling Karen every fifteen minutes. He told Karen that he attacked Lynn and asked if she was going to press charges. At trial, Linda Raymond said she saw Garcia at a bar on August 10, 1984. He told her that he raped Lynn Underwood. Karen's father also testified that on August 11, 1984, appellant called and told him, "I raped your daughter Lynn." That same day Lynn went to the police accompanied by Karen and her fiance. Asked why she reported the assault on August 11th, Lynn testified that "he told Karen he was going to get the other sisters too."

Appellant testified in his own behalf and recounted that Lynn volunteered to bring him a blanket. Following a walk along the lakeshore, they embraced and engaged in sexual intercourse.

Over objection by defense, a letter written by Garcia to Karen five weeks after his arrest, where he described himself as "the boyfriend of Karen Underwood who raped her sister Lynn," was received in evidence.

Appellant was convicted by a jury of criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344(c). He was sentenced to 120 months—an upward departure of 23 months from the sentencing guidelines.

## ISSUES

1. Was the evidence sufficient as a matter of law to support appellant's conviction?

2. Was appellant denied a fair trial?

3. Were there substantial and compelling circumstances which justified an upward durational departure from the presumptive sentence?

## ANALYSIS

1. Under Minn.Stat. § 609.344(c), the State must prove that defendant used force or coercion to sexually penetrate complainant without her consent. Minn.Stat. §§ 609.344, 609.341, subd. 12 (1984). Appellant argues that Lynn's testimony was of such dubious veracity that appellant's conviction should be reversed outright.

*See State v. Kemp,* 272 Minn. 447, 449, 138 N.W.2d 610, 611 (1965).

These arguments are without merit. Appellate courts must "view the evidence in a light most favorable to the jury verdict and decide whether the jury could reasonably have found the defendant guilty of the crime charged." *State v. Swain,* 269 N.W.2d 707, 712 (Minn.1978). Where the case hinges upon conflicting testimony, "weighing the credibility of the witnesses is the exclusive function of the jury." *State v. Heinzer,* 347 N.W.2d 535, 538 (Minn.Ct.App.1984) (quoting *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn. 1980)). In this case, the jury obviously considered the State's witnesses more credible and their finding will not be disturbed.

■ Corroboration of a rape victim's testimony is not required. Minn.Stat. § 609.347 (1984). *State v. Ani,* 257 N.W.2d 699, 700 (Minn.1977). Although not required, the rape was corroborated by testimony of Ballinger as to Lynn's condition and the condition of her clothes. *See State v. Anderson,* 272 Minn. 384, 386, 137 N.W.2d 781, 782 (1965). Also, there was testimony of Linda Raymond regarding appellant's admission that he raped Lynn. In short, "the jury was entitled to disbelieve appellant's story." *State v. Finbraaten,* 363 N.W.2d 473 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Apr. 18, 1985).

■ 2. Appellant argues the court erred by permitting evidence of bad character to prove that defendant acted in conformity with his character. Minn.R.Evid. 404(a). Appellant contends that testimony by Karen regarding appellant's drinking and abusive behavior should have been excluded. Karen's testimony provided a factual background for the jury's understanding, and was limited to a brief summary of Karen's reasons for leaving Garcia.

■ Appellant also contends that the letter he wrote to Karen after his arrest should not have been admitted because portions of it could be taken out of context. The jury had access to the whole letter, not just selected portions, and defense counsel emphasized the portions which appellant thought favorable. Furthermore, the contents of the letter were cumulative to the testimony concerning appellant's harassing phone calls to Karen and other family members. The trial court has broad discretion in matters concerning the relevancy of evidence. *State v. Swain,* 269 N.W.2d 707, 714 (Minn.1978). There was no clear abuse of discretion here. *See State v. Turnipseed,* 297 N.W.2d 308, 311 (Minn.1980).

■ Finally, appellant argues he was denied a fair trial because of the following closing remarks by the prosecutor.

He was going to leave town, but he wouldn't leave the family alone. He called and threatened to get the rest of her sisters. He called all these other people and kept saying, I've raped Lynn, I've raped Lynn. He was forcing this entire issue until he actually got what he wanted and that was to force these good people to come in here and testify about all of this.

"The prosecutor and the defense have considerable latitude in closing argument, for neither is required to make a colorless argument." *State v. Jensen,* 308 Minn. 377, 380, 242 N.W.2d 109, 111 (1976). No objection or request for a cautionary instruction was made in this case. The failure to object implies that nothing was found to be improper in the argument. *State v. Flom,* 285 N.W.2d 476, 477-8 (Minn.1979). The issue is waived on appeal. *See State v. Parker,* 353 N.W.2d 122 (Minn.1984).

■ 3. The trial court cited several reasons for the 23 month upward departure, including Garcia's luring his victim to the park (to help an injured sister) and inflicting trauma on the Underwood family by telling them of the rape. These factors support the upward departure. *See State v. Norton,* 328 N.W.2d 142, 146 (Minn. 1982). The departure was also justified on the basis that Garcia penetrated his victim in more than one way (vaginally and oral-

ly). *Ture v. State,* 353 N.W.2d 518, 522 (Minn.1984).

## DECISION

The evidence was sufficient to support the verdict. Appellant was not denied a fair trial. An upward departure of 23 months was based on substantial and compelling circumstances. Affirmed.