Floyd Solomon MARSHALL, Sr., Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C6-86-601.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Review Denied Dec. 17, 1986.

C. Paul Jones, State Public Defender, Ann Remington, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, State Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Larry K. Mickelberg, Clay Co. Atty., Moorhead, for respondent.

Considered and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This appeal is from denial of a petition for post-conviction relief. Appellant Floyd Solomon Marshall brought this petition following his conviction for intrafamilial sexual abuse in the fourth degree, Minn.Stat. § 609.3644, subds. 1(2)(e) and 2 (1982), and imprisonment for a term of 70 months. Following a post-conviction hearing before the same judge who had presided at the jury trial, Marshall's petition was denied except that his sentence was reduced to 45 months.[1] We affirm.

## FACTS

In 1971, appellant married Mary Marshall who had a four-year-old daughter (M.D.M.) from a previous relationship. In 1974, the couple had a son (F.S.M.).

On February 27, 1984, M.D.M., 16 years old at the time and a junior in high school, arrived home about three hours late from school. One of her regular responsibilities was to babysit for her 10–year-old brother until her mother arrived home from work. An argument involving appellant, Mary Marshall, and M.D.M. ensued. M.D.M. stated that although she attempted to explain why she was late, neither of her parents would believe her. She claimed that appellant then hit her and her mother several times; Mary Marshall and F.S.M. supported appellant's claim that he only slapped M.D.M. once and that he accidentally hit Mary Marshall while gesturing with his hands when she tried to intervene.

1. During this hearing, both parties realized for the first time that the jury instructions failed to emphasize the State's burden of showing multiple acts of sexual contact over an extended period of time (as required to prove fourth degree intrafamilial sexual abuse) and that the verdict forms did not provide for a specific finding as to these multiple acts. At the State's suggestion and with appellant's consent, the post-conviction court treated the conviction as a violation of Minn.Stat. § 609.3644, subd. 1(1) (1982) (single act of sexual contact with a minor). Given appellant's criminal history score, the presumptive sentence for a violation of subdivision 1(1) is 37–45 months.

Appellant apologized to M.D.M. and left the house. M.D.M. went to stay at a friend's house. On March 1, 1984, she reported the incident to a school counselor who contacted Lieutenant Michael McCarthy of the Moorhead Police Department. M.D.M. and the counselor went to the police station where M.D.M. gave McCarthy a statement alleging physical abuse. Later that morning, McCarthy received a second call from the counselor informing him that M.D.M. had broken down in his office and had claimed that appellant had also sexually abused her a number of times. McCarthy suggested that M.D.M. be referred to a rape and abuse crisis center.

McCarthy received a call from another school counselor on March 5, 1984 stating that M.D.M. was in his office with a second allegation of assault. McCarthy interviewed her regarding her complaint of physical abuse but was unable to obtain any information about the sexual assault because "[s]he was extremely distraught and unwilling to talk about it." On March 12, 1984, McCarthy interviewed M.D.M. for a third time regarding her allegations of sexual assault and was successful in obtaining a statement from her. At trial, McCarthy testified that it was not unusual for five to eight months to elapse between an incident and its report.

Based on the statement M.D.M. gave to McCarthy, a complaint was issued alleging that appellant had assaulted M.D.M. on February 27, 1984, and that he had sexually abused her on at least two occasions between July and November 1983—once on July 24 and again in the fall about a month after school had started. He was arrested a few days later.

After several months during which appellant changed counsel, waived an omnibus hearing, moved for a change of venue, moved for a continuance, and was appointed a public defender at the State's request to assist in his defense, a three-day trial was held in November 1984. During opening statements, the defense counsel informed the jury that appellant would be taking the stand in his own defense and

that he had prior convictions, including a 1978 conviction for sexually abusing M.D.M. for which he had been imprisoned four years.

The State called three witnesses: M.D.M., Lieutenant McCarthy, and Rosemary Hahn, a social worker employed by Clay County Social Services. The majority of M.D.M.'s direct testimony was elicited through leading questions by the prosecutor. McCarthy and Hahn's testimony was limited; they were not allowed to testify as to the substance of M.D.M.'s statements. Hahn first met M.D.M. in April 1984 and testified that her trial testimony was consistent with the statements she had made during counseling. McCarthy testified only as to the events following M.D.M.'s first report of abuse on March 1, 1984.

Mary Marshall, F.S.M., John A. James (a friend of appellant's), and appellant himself testified for the defense. Appellant denied M.D.M.'s allegations. He testified that he was in Minneapolis the weekend of July 24 and that he was never alone with M.D.M. during September or October 1983. He admitted that he had slapped M.D.M. on February 27, but stated that he had done so for disciplinary reasons. Both Mary Marshall and F.S.M. corroborated appellant's testimony. James verified that appellant was in Minneapolis on July 24.

The jury returned a verdict of not guilty on the assault charge but found appellant guilty of sexually abusing M.D.M. His appeal was dismissed when he moved to remand for post-conviction proceedings. Following a post-conviction hearing during which testimony was taken from appellant and from his former attorney, George Duis, the court denied his petition in most respects. This appeal followed.

## ISSUES

1. Is the evidence sufficient to sustain the conviction?

2. Was appellant denied a fair trial due to a number of evidentiary and other rulings made by the trial court?

3. Was appellant accorded effective assistance of counsel?

4. Did the post-conviction court properly exercise its discretion when it refused to grant a downward dispositional or durational departure?

## ANALYSIS

On appeal from denial of a petition for post-conviction relief, the standard of review is stringent:

> Appellant carries the burden of proof to establish the facts alleged in his petition. *Hanson v. State,* 344 N.W.2d 420, 423 (Minn.Ct.App.1984). The trial court acts as a fact-finder and must decide whether the State has met its burden of proof. An appellate court must evaluate whether the evidence is sufficient to support the trial court's post-conviction findings. *State v. Doughman,* 340 N.W.2d 348, 351 (Minn.Ct.App.1983). A reversal will not occur if the findings are supported by sufficient evidence. The court must view the evidence in the light most favorable to the State and assume the jury believed the evidence supporting the convictions and disbelieved any contrary evidence. *State v. Dillard,* 355 N.W.2d 167, 171–72 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Oct. 30, 1984).

*Herme v. State,* 384 N.W.2d 205, 207 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. May 22, 1986). The post-conviction court here made excellent and detailed findings with an attached memorandum addressing each of appellant's claims. Thoughtful consideration was given to all the issues raised.

## I

Appellant argues that the State failed to prove his guilt beyond a reasonable doubt because it relied entirely on the testimony of M.D.M., a witness of questionable veracity whose statements were uncorroborated, diametrically opposed to the testimony of the defense witnesses, repeatedly inconsistent and vague during trial and tainted by a strong motive to fabricate.

 Corroborative testimony of a complainant in a sex crime offense is not required; however, in an individual case the absence of corroboration might mandate a holding on review that the evidence was legally insufficient. *State v. Ani,* 257 N.W.2d 699, 700 (Minn.1977). Admittedly, this case lacks other "strong corroborating evidence" such as a prompt complaint of the incident, evidence of the victim's physical and emotional condition, or detailed descriptions by the victim of the incidents.[2]

In *State v. Hamilton,* 289 N.W.2d 470 (Minn.1979), the complainant's testimony was also weakly corroborated, but the supreme court still rejected the defendant's argument that the evidence was insufficient to sustain the guilty verdicts:

> Nor is this case one in which the evidence to overcome the presumption of innocence is completely dependent upon a single witness whose testimony, considered in the light of the record as a whole, is of dubious veracity, and where a careful scrutiny of the record creates grave doubts of the defendant's guilt. *State v. Kemp,* 272 Minn. 447, 138 N.W.2d 610 (1965). Despite the minor inconsistencies in the state's case and the relative inconclusiveness of the supporting evidence, we defer to the jury's right to believe the complainant and disbelieve the defendant and hold that the evidence was sufficient to sustain the verdicts of guilt beyond a reasonable doubt.

*Id.* at 477 (footnote omitted).

Similarly, M.D.M.'s testimony of the events, while not particularly detailed, was positive and relatively consistent. We agree with the post-conviction court's conclusion that M.D.M.'s testimony "including gestures, was specific as to more than one incident where [appellant] touched her breast and/or pelvic area while trying to

**2.** *See, e.g., State v. Wrightington,* 323 N.W.2d 793, 794–95 (Minn.1982); *State v. Blair,* 381 N.W.2d 908, 910–11 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. April 11, 1986); *Patten v.* *State,* 378 N.W.2d 648, 650 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Feb. 14, 1986); *State v. Daby,* 359 N.W.2d 730, 732–33 (Minn.Ct.App. 1984).

disrobe her." Her testimony was unequivocal and the jury was entitled to believe her story and to disbelieve appellant's account.

Moreover, we disagree that the veracity of M.D.M.'s testimony must be questioned. The post-conviction court concluded that any inconsistencies in her testimony could be attributed "to the passage of time between the incidents themselves and the trial and to the stress on [M.D.M.] which the courtroom experience created." It reasoned that an immediate report of an incident of sexual abuse is not required and that the jury was "free to consider the staleness of the reporting when assessing the credibility of the complainant and the likelihood of fabrication." The post-conviction court finally noted:

> [Appellant] suggests that [M.D.M.] had a strong motive to fabricate arising from her discomfort with her [mother's biracial marriage] to [appellant] and that [M.D.M.] chose to report abuse because she was unhappy with [appellant's] strict discipline of her. The Court finds that the jury adopted the prosecutor's equally plausible explanation for the delay in reporting that despite [M.D.M.'s] efforts to remain in this troubled family and her desire for [appellant] to admit his problems and undergo counseling, when [appellant] slapped her she lost hope of being able to resolve the situation * * * within the family and exposed to the authorities on-going abuse that she had withstood.

After a careful review of the record, we conclude that the evidence was legally sufficient to sustain the verdict of guilty beyond a reasonable doubt.

## II

■ Appellant contends that he was deprived of a fair trial by a number of evidentiary and other rulings made by the trial court. He first claims that the trial court committed reversible error by permitting the introduction of his five prior convictions, particularly his 1978 conviction and imprisonment for sexually abusing M.D.M. This evidence, however, was introduced by appellant as a matter of trial tactics. The post-conviction court properly found that appellant "chose to reveal his prior felony convictions to the jury from the opening statement of his counsel forward in an attempt to establish his credibility." Clearly, a defendant who himself brings out prior convictions, even stale ones, in order to establish his credibility with the jury cannot later complain that his tactic failed. *See State v. Helenbolt*, 334 N.W.2d 400, 407 (Minn.1983).

Furthermore, the jury was given a cautionary instruction at the close of the trial and advised that evidence of appellant's prior convictions

> was admitted only for your consideration in deciding whether the defendant is telling the truth in this case. You must not consider these convictions as evidence of his character or conduct in this case, except as you may think it reflects upon the believability of his testimony.

Since introduction of appellant's prior felonies was a legitimate trial tactic and since a cautionary instruction was given, we find no error.

■ Appellant next contends that it was reversible error to permit social worker Hahn to testify that M.D.M.'s testimony was consistent with her statements during counseling and to allow McCarthy to testify concerning his interviews with M.D.M. following the February 27 incident. We disagree. Under *State v. Hesse*, 281 N.W.2d 491 (Minn.1979), such evidence is admissible for corroborative purposes where the victim of a sexual assault is present, under oath and subject to cross-examination. *Id.* at 492. The jury here was properly instructed to consider the evidence for this limited purpose.

■ Appellant additionally claims that he is entitled to a new trial because the complaint failed to set forth a specific date upon which the second alleged incident occurred, making it impossible for him to prepare a defense. M.D.M. was unable to recall the specific date of the second incident, but testified that it had occurred a month to a month and a half after school

had started, sometime during the week, and on a day in which there was snow on the ground. The post-conviction court properly found that this time frame was sufficiently specific. *See State v. Becker,* 351 N.W.2d 923 (Minn.1984); *State v. Eggert,* 358 N.W.2d 156, 160 (Minn.Ct.App. 1984).

Appellant next asserts he is entitled to a new trial because several of the prosecutor's statements amounted to misconduct. These alleged incidents of misconduct were never objected to by the defense counsel and were therefore not ruled upon by the trial court. The post-conviction court nevertheless considered and rejected appellant's arguments:

> As to the alleged misconduct of the prosecutor in providing the jury with a brief personal introduction, the court fails to understand how this could have prejudiced [appellant] if in fact it was inappropriate and the court is not convinced that the A.B.A. Standards for Criminal justice precluded an introduction in an opening statement. Further, the court finds that on the few occasions in her closing argument when the prosecutor used the words "I believe" or "I think" she was applying the evidence in her argument and drawing reasonable inferences therefrom, rather than directly expressing an opinion on the truth or falsity of the evidence.

The post-conviction court also found appellant's claim that he was prejudiced by the prosecutor's comment to defense witness James about a pending arrest warrant to be unsupported by the record. We agree with these conclusions and do not believe that the prosecutor's statements were either inappropriate or prejudicial.

■ Appellant further contends that the absence of Minnesota counsel during crucial portions of his trial violated Seventh Judicial District Rule 9 and denied him a fair trial. At the State's request, a Clay County public defender was appointed prior to trial to assist appellant's North Dakota attorney. When trial commenced, the public defender was granted leave to be absent during part of the next day because of a scheduling conflict, and was also later excused from closing arguments. At no time was there any objection from appellant, his North Dakota attorney, or the State. The post-conviction court properly concluded that appellant had waived "the presence of a Minnesota licensed attorney during particular aspects of the proceedings and the court using its discretion, and acting in accordance with well accepted practice in Clay County, allowed [appellant] to proceed with his chosen counsel at trial."

### III

■ Finally, appellant seeks a new trial on the ground that he was denied his sixth amendment right to effective assistance of counsel due to some 15 alleged errors in his attorney's performance, including his failure to object to the impeachment by prior conviction, his refusal to allow a court trial, and his failure to investigate and subpoena defense witnesses because he had only been paid $250 as a retainer. To reverse a conviction based on ineffective counsel, a defendant must show that counsel's performance was deficient as measured by an objective standard of reasonableness under prevailing professional norms and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ At the post-conviction hearing, testimony was taken from appellant and from Duis, his attorney at trial. However, no expert testimony was elicited as to whether Duis' representation was below professional norms or whether the result of the trial would have been different. The post-conviction court found that Duis "is an experienced criminal lawyer" and that his decisions were legitimate trial tactics "made jointly by attorney and client after a discussion of the options and tactical reasons for particular decisions." After examining the record, we agree that Duis' decisions were legitimate trial tactics and that his performance was not deficient as measured by

an objective standard of reasonableness under prevailing professional norms.

### IV

Appellant lastly contends he was entitled to a stay of execution of the sentence. Under Minn.Stat. § 609.3644, subd. 2, a court may stay imposition or execution of a sentence "if it finds that a stay is in the best interest of the complainant or the family unit." *Id.* The post-conviction court here concluded that "[appellant] has not demonstrated to this court in any way that a stay of his sentence would benefit anyone but [himself]." Its refusal to grant a stay was well within its discretion.

Appellant also claims that he is entitled to a downward durational departure, despite the fact that the post-conviction court expressly found "his conduct no less egregious than that normally associated with this offense." Again, the post-conviction court properly exercised its discretion in refusing to grant a downward durational departure and in sentencing appellant to 45 months, the higher end of the presumptive guideline range. *See State v. Kindem,* 313 N.W.2d 6 (Minn.1981).

### DECISION

Denial of appellant's petition for post-conviction relief is affirmed.

Affirmed.