*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1862**

State of Minnesota,
Respondent,

vs.

Jeremy Thomas Herrera,
Appellant.

**Filed November 3, 2025**
**Affirmed in part, reversed in part, and remanded**
**Wheelock, Judge**

Ramsey County District Court
File No. 62-CR-23-5479

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Anna R. Light, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Wheelock, Judge; and Bentley, Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Appellant challenges the judgments of conviction for second-degree aggravated robbery, simple robbery, and theft from a person, asserting that there are grave doubts as to the aggravated- and simple-robbery convictions and that the simple-robbery and

theft-from-a-person convictions are for lesser-included offenses and thus must be vacated. We affirm in part, reverse in part, and remand.

## FACTS

In September 2023, respondent State of Minnesota charged appellant Jeremy Thomas Herrera with second-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 2 (2022), after he entered a shop in St. Paul and demanded money from the cash register. Herrera was not sheltered at the time and had been "signing" earlier that day, which he described as taking a cardboard sign to the side of a road and asking passersby for help, ideally in the form of money. He had spent the morning signing unsuccessfully, but after someone threw something at him and screamed at him as they drove past, he left the road and walked for a while.

Herrera found a black marker and wrote a message on the other side of his sign: "Hello—This may or may not involve you, but open the register and give me dollars. Stay calm." He then entered the shop, walked to the cash register, and put the sign on the counter with these words face up for the cashier to read.

The cashier was a high-school student, K.K. During trial, K.K. testified that she could not remember what the sign said, but she thought it said something about having a gun. K.K. froze and could not remember how to open the register, and she recalled Herrera telling her "to hurry up," that he was not "messing around," and that he would shoot her. K.K. stated that Herrera kept one hand in his sweatshirt pocket during this exchange, and she thought that he moved his hand around something. K.K. testified that she felt "scared he was gonna shoot [her] if [she] couldn't give him the money." She managed to open the

2

cash register and gave Herrera money that consisted of small bills in denominations of $1, $5, $10, and $20. K.K. guessed that she gave him about $60 in cash, after which K.K. watched Herrera quickly leave. K.K. told her manager what had occurred, and the manager called police to report the incident.

After Herrera took the cash, he fled on foot. Officers later found him hiding in the stairwell of a parking ramp down the street. Officers identified Herrera because he matched the description provided by K.K. and other witnesses and because the cardboard sign with the demand for money from the cash register was seen near him. When officers searched Herrera incident to his arrest, they "found a large mass of U.S. currency," about $60 in total. An officer brought one of the witnesses to the site of the arrest; the witness identified Herrera as the person he saw entering the shop and leaving quickly. The officer who brought the witness to the scene of the arrest testified that the witness "said he was 100% certain" that Herrera was the man he witnessed committing the crime. The police did not find any weapons when they arrested Herrera.

During trial, Herrera requested that the jury be instructed on the lesser-included offenses of simple robbery under Minn. Stat. § 609.24 (2022) and theft of property from a person under Minn. Stat. § 609.52, subd. 2(a)(1) (2022).

Herrera waived his right to remain silent at trial. During his testimony, Herrera admitted that a person could perceive the words he wrote on the sign as a threat. He also agreed that he did not think K.K. would have given him money if he had merely asked her to do so and that she gave him the money because he scared her. However, he testified that

he never had a firearm and that he did not imply that he had a firearm or would shoot K.K. Hererra admitted that "everything else" to which the witnesses testified was "correct."

The jury found Herrera guilty of all three offenses. At sentencing, the district court entered judgments of conviction on all three counts and sentenced Herrera to 51 months' imprisonment for the second-degree aggravated-robbery offense.

Herrera appeals.

## DECISION

**I.** **The state provided sufficient evidence to support the jury's findings of guilt for the aggravated-robbery and simple-robbery offenses.**

Herrera argues that this court must reverse his convictions for aggravated and simple robbery because there are "grave doubts" about his guilt. He argues that the state did not remove all reasonable doubt that he implied that he possessed a gun or threatened the use of force and that, therefore, the jury should not have been able to find him guilty of these two charges. Specifically, he highlights inaccuracies in K.K.'s testimony and the lack of evidence corroborating her testimony that she believed he possessed a firearm. The state responds that Herrera's "grave doubts" argument is based on an archaic rule that we should not consider and that Herrera is arguing there was insufficient evidence. The state asserts that all its evidence was direct evidence and was sufficient to support the conviction.

Before we analyze the state's evidence, we note that it is outside our practice as an error-correcting court to overturn a conviction on the basis of "grave doubt." *See State v. Stewart*, 923 N.W.2d 668, 677 n.8 (Minn. App. 2019) (explaining that the "grave doubts" argument falls under the purview of the supreme court), *rev. denied* (Minn. Apr. 16, 2019).

4

Herrera's argument rests on the credibility of K.K. and on outdated caselaw that would permit the fact-finder's credibility determinations to be set aside in rare cases hinging on the incredible, uncorroborated testimony of a single witness, *see, e.g.*, *State v. Langteau*, 268 N.W.2d 76 (Minn. 1978); *State v. Kemp*, 138 N.W.2d 610 (Minn. 1965),[1] but this court has persuasively observed that, "in recent decades, the supreme court consistently has applied a form of review that is more deferential to the fact-finder's evaluation of the evidence." *State v. Phillips*, No. A19-0863, 2020 WL 2312506, at *3 (Minn. App. May 11, 2020) (citing *State v. Carufel*, 783 N.W.2d 539, 546 (Minn. 2010)), *rev. denied* (Minn. Aug. 11, 2020); *see* Minn. R. Civ. App. P. 136.01, subd. 1(c) ("Nonprecedential opinions . . . may be cited as persuasive authority."). We are not persuaded to depart from current supreme court caselaw, which defers to the fact-finder's credibility determinations, *see Carufel*, 783 N.W.2d at 546 ("[O]ur review on appeal is limited to a painstaking analysis of the record to determine whether the evidence . . . was sufficient to permit the jurors to reach the verdict which they did. The weight and credibility of the testimony of individual

---

[1] The supreme court in *Kemp* expressed concern that the complaining witness in that case was not impeached with prior inconsistent statements that may have cast doubt on his credibility with the fact-finder. 138 N.W.2d at 611-12. Even if we were to apply the "grave doubts" caselaw Herrera cites, we would not determine that there are similar circumstances hindering the fact-finder's ability to assess credibility. Here, the fact-finder received all the record evidence that, Herrera argues, undermines K.K.'s credibility. Likewise, in *Langteau*, the supreme court expressed concern about the absence of evidence other than the complaining witness's testimony that an incident between him and the defendant had occurred or any logical reason why it would have. 268 N.W.2d at 77. Here, the testimonies of K.K. and Herrera agree that the crime of theft took place but disagree as to whether Herrera implied possession of a gun or threatened the use of force, and as is explained in further detail below, the fact-finder received other evidence of the incident and its investigation that allowed it to assess their credibility as to that point.

witnesses is for the jury to determine." (quotations omitted)); we therefore interpret Herrera's argument as a challenge to the sufficiency of the evidence.

"When evaluating the sufficiency of the evidence, appellate courts carefully examine the record to determine whether the facts and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016) (quotation omitted). The standard of review that appellate courts apply when evaluating the sufficiency of the evidence depends on whether direct or circumstantial evidence supports the element of the offense that is challenged on appeal. *See State v. Stein*, 776 N.W.2d 709, 714 (Minn. 2010). "A conviction based on circumstantial evidence receives stricter scrutiny than a conviction based on direct evidence." *Id.* "[D]irect evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (quotations omitted). Circumstantial evidence is "evidence from which the factfinder can infer whether the facts in dispute existed or did not exist." *Id.* (quotations omitted).

To prove Herrera's guilt of aggravated robbery, the state needed to prove that, "while committing a robbery," Herrera "implie[d], by word or act, possession of a dangerous weapon." Minn. Stat. § 609.245, subd. 2. To prove Herrera's guilt of simple robbery, the state needed to prove that Herrera "use[d] or threaten[ed] the imminent use of force." Minn. Stat. § 609.24. Herrera challenges only these elements of the charges.

6

The state argues that all the evidence to support the challenged elements was direct evidence and therefore that the direct-evidence standard of review should apply. We need not decide whether the direct- or circumstantial-evidence test applies because we affirm even under the heightened circumstantial-evidence standard of review. *See State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013) (analyzing a sufficiency-of-the-evidence issue under the "more favorable" circumstantial-evidence standard).

A circumstantial-evidence analysis consists of two steps. First, appellate courts must identify the circumstances proved by the state's evidence and "defer to the jury's acceptance of the proof of these circumstances." *Id.* at 598-99 (quotations omitted). Any evidence that conflicts with the circumstances proved is viewed "in the light most favorable to the verdict." *Id.* at 599 (quotation omitted). "Stated differently, in determining the circumstances proved, [appellate courts] consider only those circumstances that are consistent with the verdict." *Id.*

Second, appellate courts must "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). Appellate courts "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved; this includes inferences consistent with a hypothesis other than guilt." *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010) (quotation omitted). The circumstances proved must be considered as a whole to determine whether they prove the challenged element of the offense beyond a reasonable doubt. *Id.* at 332. And even if one reasonable inference would permit a finding

of guilt, a conviction based on circumstantial evidence may not stand if other reasonable inferences inconsistent with guilt exist. *Silvernail*, 831 N.W.2d at 599.

The state proved the following relevant circumstances:

- Herrera entered the shop and approached K.K., a high-school student working the cash register, with a cardboard sign that said, "[O]pen the register and give me dollars. Stay calm."
- When K.K. read the cardboard sign, Herrera "looked down to his pocket," moved his hand in his pocket, "motioned to it, and then looked back up at [K.K.]."
- When K.K. could not open the cash register, Herrera told her that "he wasn't messing around" and that "he'd shoot [her]."
- Herrera kept his hand inside his pocket during the exchange, and it looked like he was holding something.
- K.K. gave Herrera money from the cash register because she "thought he would shoot [her] if [she] didn't."
- K.K. believed that Herrera had a gun in his pocket.

Having identified the circumstances proved, we determine that they are consistent with the inferences that Herrera intended to imply that he possessed a dangerous weapon and threatened to use imminent force and are inconsistent with any other rational hypothesis. The state proved that Herrera approached K.K. with a sign that told her to give him money and stay calm, that he clutched something in his hand and moved it around in his pocket during the exchange, and that K.K. believed Herrera when he said he would shoot her if she did not comply.

Most of the circumstances proved derive from K.K.'s testimony, and Herrera challenges her credibility on appeal, but it is not for an appellate court to question the jury's credibility determinations or reconcile conflicting testimony. *State v. Bliss*, 457 N.W.2d 385, 391 (Minn. 1990). And notwithstanding that the uncorroborated testimony of a single witness may sustain a conviction, *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004),

8

K.K.'s testimony is corroborated. For example, officers found Herrera because he matched K.K.'s description, and they found approximately $60 in small denominations of bills in Herrera's possession and a cardboard sign near him demanding that the reader give him money. Additionally, another witness identified Herrera as the person of interest from the robbery shortly after Herrera's arrest. All these details corroborate K.K.'s testimony. Because a single witness's testimony may sustain a conviction, much of K.K.'s testimony is corroborated, and appellate courts do not reconcile conflicting testimony, we conclude that the state provided sufficient evidence to support the jury's findings of guilt for the aggravated-robbery and simple-robbery offenses.

**II.     The district court erred by entering judgments of conviction for simple robbery and theft of property from a person because they are lesser-included offenses of aggravated robbery.**

Herrera argues that the district court erred by entering judgments of conviction for both simple robbery and theft from a person because they are lesser-included offenses of second-degree aggravated robbery and arose from the same behavioral incident. The state agrees.

A defendant may be convicted "of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2022). "This statute generally forbids two convictions of the same offense or of one offense and a lesser included offense on the basis of the same conduct. An included offense includes a crime necessarily proved if the crime charged were proved." *State v. Holmes*, 778 N.W.2d 336, 340 (Minn. 2010) (quotations omitted). A review of the elements of the offenses reveals that aggravated robbery is the commission of a robbery with the addition of a dangerous weapon. *Compare* Minn. Stat.

9

§ 609.24 (simple robbery), *with* Minn. Stat. § 609.245, subd. 1 (second-degree aggravated robbery). Caselaw establishes that theft is a lesser-included offense of aggravated robbery. *See State v. Coleman*, 373 N.W.2d 777, 781 (Minn. 1985) (explaining that aggravated robbery without theft is assault). Therefore, if a person is found guilty of second-degree aggravated robbery, they must also have been found to have committed the offenses of simple robbery and theft from a person.

Because a person cannot be convicted of both the crime charged and lesser-included offenses, we reverse and remand for the district court to vacate the judgments of conviction for both simple robbery and theft from a person while leaving the jury's findings of guilt intact. *See State v. Hallmark*, 927 N.W.2d 281, 300 (Minn. 2019) (reversing and remanding for the district court to vacate the conviction for the lesser-included offense but leaving the finding of guilt intact).

In sum, we affirm the district court's judgment of conviction for second-degree aggravated robbery because the state provided sufficient evidence to support it. While we reverse the judgments of conviction for simple robbery and theft from a person because they are lesser-included offenses, the state provided sufficient evidence to support them, and we leave the guilty verdicts intact. We remand to the district court with instructions to amend the warrant of commitment accordingly.

**Affirmed in part, reversed in part, and remanded.**